**Louis LEVINE, Plaintiff,**

v.

**J. N. RUSSELL & CO., Inc., Defendant.**

**Civ. No. C 68–730.**

United States District Court,
N. D. Ohio, E. D.

Dec. 11, 1969.

Wm. B. Webber, Robert W. Boughton, Roemisch & Wright, Cleveland, Ohio, for plaintiff.

Richard J. Cusick, Jr., A. A. Sommer, Jr., Calfee, Halter, Calfee, Griswold & Sommer, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER RE: MOTION TO DISMISS

KALBFLEISCH, District Judge.

This action is one wherein plaintiff seeks to recover damages alleged to have resulted from defendant's violation of Sections 7 and 10 of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78g and 78j) and from breach of the fiduciary duty which defendant as a broker-dealer owed to the plaintiff as its customer. Defendant has moved to dismiss the complaint for failure to state a claim upon which relief can be granted, and because this Court lacks jurisdiction of the subject matter of the action.

Treating all facts well-pleaded in the complaint, together with the reasonable inferences therefrom, as established for the purpose of ruling on defendant's motion, it appears that during the years 1966 and 1967 plaintiff and his son, Gerald, maintained separate customer accounts at defendant's Cleveland office for the purpose of engaging in securities transactions. Sometime prior to September of 1967, Gerald effected a series of transactions through defendant involving both his own and the plaintiff's accounts, whereby he became indebted to the defendant for an amount which he was unable himself to pay.

In September of 1967 defendant informed the plaintiff of Gerald's indebtedness, yet undetermined in amount, and that the debt consisted of losses sustained in both Gerald's and the plaintiff's accounts. When defendant threatened to prosecute plaintiff's son for the indebtedness, plaintiff paid $60,000 to defendant "for and on behalf of his son." (Complaint, para. 9.) This first payment was made on September 13, 1967. Early in October the exact amount owing to defendant was determined, and plaintiff, still under threat of duress and prosecution of his son for the indebtedness, then executed and delivered to the defendant a promissory note in the amount of $97,415.29, giving as security therefor a mortgage upon real estate owned by plaintiff and his wife. Shortly thereafter, Gerald and the plaintiff executed with the defendant mutual releases from all claims of any kind and for any purpose.

Plaintiff in this action seeks recovery of the original payment of $60,000, plus $82,000 in payments made to date upon the note and mortgage. The additional allegations upon which the right to recovery is premised involve conduct of the defendant in connection with the original transactions effected by Gerald, and the manner in which defendant induced plaintiff to pay the resultant indebtedness.

Specifically, the complaint avers that plaintiff at no time executed and deliver-

ed to defendant a power of attorney authorizing any person other than plaintiff to place and execute orders for the purchase or sale of securities in the plaintiff's customer account. Also, plaintiff alleges that defendant engaged in certain activities in connection with the original purchases and sales effected by Gerald, including extension of credit, long and short sales, and overtrading. For the purposes of the instant motion, it will be assumed that defendant's activities in relation to Gerald before September of 1967 were in violation of Sections 7 and 10 of the Securities Exchange Act of 1934.

With regard to the plaintiff himself, the complaint avers that defendant permitted and consummated the transactions in plaintiff's account for the benefit and purposes of Gerald; also, plaintiff asserts that at the time he undertook payment of his son's indebtedness he was aware only of the approximate amount of the debt and that he had not been informed of the complete nature, character, extent or significance of the activities of the defendant and his son which are outlined above. Finally, it is averred that, had the complete nature and extent of the defendant's illegal activities, and their effect upon the indebtedness, been specifically and completely disclosed, the plaintiff could have acted differently relative to the note, mortgage and release herein involved.

The primary thrust of defendant's motion is aimed at plaintiff's standing to sue for the alleged violations of Sections 7 and 10 of the Act. Regarding Section 10 and Rule 10b–5 (17 C.F.R. 240.10b–5), it is asserted that such standing requires that one be either a "purchaser" or "seller" of the securities in question; under the facts alleged, defendant claims that plaintiff falls into neither category.

The words "in connection with the purchase or sale of any security," as used in the statute and rule, were first interpreted in Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2nd Cir. 1952), cert. denied 343 U.S. 956, 72 S. Ct. 1051, 96 L.Ed. 1356, as limiting the class of persons who may maintain a civil action under the Act to defrauded purchasers or sellers of securities. Though the cases cited by plaintiff in the brief opposing the motion indicate that the courts have, on occasion, expanded the classes of "seller" and "purchaser" to include persons who, under a strict definition of those terms, would not be considered such, the principle set out in *Birnbaum,* supra, still guides the determination of the question of standing to sue under Section 10 of the Securities Exchange Act. Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963 (2nd Cir. 1969).

A decision as to whether the plaintiff in this case is such a "purchaser" or "seller" is deeply rooted in factual considerations and, for this reason, the cases which have decided this issue in the past, though helpful in that some contain situations analogous to the one here, are of limited value insofar as the facts therein differ from the facts in this case.

In analyzing the allegations of the complaint in light of the issue presented, it is clear that there were a series of purchases and sales of securities in connection with the activities alleged. Also, as noted above, it will be assumed that the activities of the defendant in connection with the original transactions effected by Gerald constituted a violation of Sections 7 and 10 of the Act, and Rule 10b–5. However, but for the fact that plaintiff's customer account was involved and the fact that plaintiff assumed the indebtedness to the defendant arising from the accused transactions, the facts of this case relate only to conduct of the defendant in dealing with the plaintiff's son, Gerald. The precise questions here are: Does the use of plaintiff's account, or the manner in which defendant obtained payment of the indebtedness from plaintiff, constitute wrongful activity "in connection with the purchase or sale of any security"? and/or Do those two factors form a nexus with the alleged illegal activities directly involving only Gerald sufficient

to render plaintiff a proper party to sue under the Act for the eventual damage alleged to have been sustained by plaintiff?

Assuming plaintiff neither authorized nor was he fully aware of the activities of defendant and Gerald until sometime after September of 1967, at which time the original indebtedness already had been incurred, then the only fraud which can be said to have been practiced upon plaintiff 'himself up to that time was the undisclosed use of his customer account. Yet plaintiff does not seek damages in this case for depletion of his account due to the unauthorized use thereof; nowhere in the complaint is there any indication of the exact nature of the indebtedness effected by Gerald. Though the debt is referred to as corresponding to losses incurred in both Gerald's and the plaintiff's accounts (Complaint, para. 8), there is no allegation as to how much of the debt resulted from transactions involving the plaintiff's account, as opposed to those involving only Gerald's account.

In addition to these considerations of what the complaint fails to allege, there are affirmative allegations contained therein which demonstrate clearly that plaintiff does not premise his cause upon the damage which he may have sustained as a direct result of the use of his account. First, the prayer is for the moneys which plaintiff paid to the defendant for the total indebtedness resulting from his son's activities, without regard to the actual loss sustained in plaintiff's own account. Second, the complaint alleges that such payments were made for and on behalf of plaintiff's son, as an accommodation to him, and under threat of duress and prosecution of Gerald, and not the plaintiff, for the indebtedness. (Complaint, paras. 9 and 11.)

Consequently, the fact that plaintiff's account was used by defendant in connection with activities which may have violated the Securities Exchange Act of 1934 was merely peripheral and coincidental to the true motivation, i.e., accommodation of his son, for payment of

the money by plaintiff, here sought to be recovered. The original debt already had been incurred before plaintiff paid defendant anything; thus the mere fact that plaintiff's account was used to incur part of the debt did not, in and of itself, result in any of the damage to the plaintiff from which relief is sought in this action.

The crucial question yet remaining is whether the circumstances surrounding the payment of money by the plaintiff to the defendant, which payment represents the damage alleged in this action, are such as to give rise to a claim on behalf of plaintiff under the Securities Exchange Act. The complaint alleges that, prior to the time the money, note, mortgage and release were given to the defendant, plaintiff had been apprised only of the approximate amount of the indebtedness incurred by his son, and was not informed of the complete nature, character, extent and significance of the alleged illegal activities of the defendant relating both to the use of plaintiff's customer account, and in defendant's dealings with Gerald whereby the original debt was incurred. (Complaint, para. 15.) Had there been full disclosure of such facts to him, plaintiff alleges that "he would have acted differently relative to the execution and delivery of the promissory note, mortgage and release agreement aforesaid." (Complaint, para. 17.)

We conclude that the nondisclosure alleged in the complaint, which *could be found to have wrongfully induced* plaintiff to part with the money which he seeks to recover in this action, was not a wrong worked upon the plaintiff "in connection with the purchase or sale of any security," in that plaintiff *does not meet the prerequisite that he be a "purchaser" or "seller"* of the securities involved in the case. The money, note, mortgage and release were not given to the defendant in exchange for the securities which had previously been purchased through Gerald's activities. As noted above, the complaint affirmatively alleges that the thing bargained for by

plaintiff, and which he sought in exchange for his money, was the freedom of his son from duress and prosecution by a creditor. The alleged wrongful nondisclosure induced the accommodation of another's debt, and not the purchase or sale of any securities.

The coincidental involvement of plaintiff's customer account and the fact that the original debt arose from securities transactions are insufficient to bring plaintiff within the "purchaser-seller" class. In Birnbaum v. Newport Steel Corp., supra, wherein the limitation here imposed was first given judicial recognition, the court held that the mere fact that a person owns securities, and because of such ownership is injured by the wrongful activities of others, does not give him the right to sue under the Act where he was not a purchaser or seller in the offending securities transactions.

Also, in Hooper v. Mountain States Securities Corporation, 282 F.2d 195 (5th Cir. 1960), cert. denied 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693, the court found that a corporation issuing stock to the defendant in exchange for worthless property was a "seller" of securities and had standing thereby to sue under the Act. In that case the court carefully analyzed the facts involved and found a "sale" of securities, noting that before the transaction the corporation had 700,000 shares of stock, while afterwards it had, or thought it had, property rights. In this case, before the transaction the plaintiff had the money which he now seeks to recover. It can also be inferred that he still had an account containing certain securities, the nature and value of which are undisclosed in the complaint. After the transaction he no longer had the money, but instead had some assurance that his son would be free from defendant's threats of duress and prosecution. It is not alleged, nor can it be fairly inferred from the facts alleged, that part of the bargain involved securities yet to be transferred. Following the analysis used in the *Hooper* case, supra, it becomes manifest that the facts,

as they relate to the plaintiff, do not permit the conclusion that he was a "purchaser" or "seller" of securities within the umbrella afforded by the Securities Exchange Act.

The Court finds, therefore, that the complaint fails to state a claim for relief under 15 U.S.C. § 78j and Rule 10b–5 promulgated thereunder.

■ The considerations discussed above apply with equal force to plaintiff's claim under Section 7 of the Act. While it is true that plaintiff's account is alleged to have been involved in the accused transactions, the activities of the defendant claimed to have violated Section 7 were directed only to Gerald. Plaintiff was not thereby induced to purchase securities, and in that sense it is clear he is not one of the persons meant to be protected against such unlawful activity.

Though plaintiff urges that Meisel v. North Jersey Trust Co. of Ridgewood, N. J., Inc., 218 F.Supp. 274 (S.D.N.Y. 1963) is to be distinguished on the facts from the instant action, the opinion and the authorities cited therein weigh heavily against a conclusion that plaintiff has stated a case under Section 7 of the Act. In the *Meisel* case, supra, one of the grounds upon which the court sustained the motion to dismiss was the lack of causal connection between the alleged violation of the Act and the damage to the plaintiff. In this case, though the alleged unlawful activity of the defendant may have affected the amount of the original indebtedness, it was not a factor in inducing the plaintiff to accommodate his son. The harm wrought by the Securities Exchange Act violations as alleged here was visited upon Gerald. The nondisclosure of those violations, as well as the unauthorized use of plaintiff's customer account, may well amount to reprehensible conduct in view of the fiduciary duty owed by defendant as a stockbroker-dealer to plaintiff as its customer; but they do not amount, in themselves, to a violation of the Act for which this plaintiff may obtain redress.

In view of the conclusion that the complaint fails to state a claim under Sections 7 and 10 of the Securities Exchange Act, the Court is without jurisdiction to decide plaintiff's third claim regarding breach of defendant's fiduciary duty to the plaintiff. There is no diversity of citizenship between plaintiff and defendant; further, absent the claims asserted under the Securities Exchange Act, the Court may not invoke the doctrine of pendent jurisdiction as defined in Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).

It is ordered, therefore, that the motion of defendant is sustained and the case is dismissed.