**Marie WILCOX et al., Plaintiffs,**

v.

**COMMERCE BANK, a corporation d/b/a Bankamericard, Kansas City, Missouri, Defendant.**

**Civ. A. No. KC–3467.**

United States District Court, D. Kansas.

May 23, 1972.

---

Ronald L. Gold, Shawnee Mission, Kan., for plaintiffs.

Thomas J. Wheatley, William M. Stapleton, of Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, Mo., Edward M. Boddington, Jr., of Boddington, Brown & Unverferth, Kansas City, Kan., for defendant.

## MEMORANDUM OPINION

O'CONNOR, District Judge.

Three credit card holders of the defendant have brought this action alleging that defendant made inadequate disclosure of certain "finance charges" in violation of the Truth in Lending Act (Title I of the Consumer Credit Protection Act of May 29, 1968, 82 Stat. 146, 15 U.S.C. §§ 1601 et seq.). Plaintiffs have applied to the court for an order designating this a class action under Rule 23(c) (1) of the Federal Rules of Civil Procedure, which order the court has agreed to rule upon before any determination of the merits of the case.

In order to maintain this suit as a class action, plaintiffs must satisfy the four requirements of Rule 23(a) and any one of the three subdivisions of Rule 23(b). The requisites of Rule 23(a) appear to have been met, and thus the only question remaining for the court's determination is whether subdivision (b) (3) of the rule—the only one of the three subdivisions which might apply to plaintiffs—has been satisfied as well. Rule 23(b) (3) requires a finding that: " . . . the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The court will only consider whether a class action is "superior to" other available methods, because that issue appears to be dispositive of the case.

Several courts have considered the issue as we have framed it, and the leading cases among the many cited in the parties' briefs are Katz v. Carte Blanche Corporation, 52 F.R.D. 510; 53 F.R.D. 539 (W.D.Pa.1971); Ratner v. Chemical Bank New York Trust Company, 329 F. Supp. 270 (S.D.N.Y.1971) 54 F.R.D. 412 (S.D.N.Y., filed Feb. 14, 1972); and Rogers v. Coburn Finance Corp. of DeKalb, 53 F.R.D. 182 (N.D.Ga.1971); 54 F.R.D. 417, filed Feb. 18, 1972. Of the three cases, only *Katz* allowed the class action to be maintained, and that decision is reportedly being appealed to the Third Circuit Court of Appeals by defendant Carte Blanche.

In *Ratner* and *Rogers*, the courts disallowed the class action because of certain special factors in Truth in Lending Act cases, factors which go beyond the four non-exhaustive considerations found in subdivision (b) (3) of the Rule itself. Advisory Committee's Notes, 39 F.R.D. 69, 104. Based upon the rulings in those two cases, the pertinent factors in this case appear to be these:

1. The action is brought under the special and particular authorization of the act's § 130(e), 15 U.S.C. § 1640(e), wherein Congress created "a species of 'private attorney general' to participate prominently in enforcement." Ratner v. Chemical Bank New York Trust Company, 329 F.Supp. 270, 280 (S.D.N.Y. 1971).

2. The substantive liability asserted by plaintiffs under § 130(a) includes minimum damages of $100, plus costs and a reasonable attorney's fee, without proof of any actual damages whatever.

3. Upon the pleadings of this case, it seems fair to conclude that plaintiffs suffered no damages at all or that, at most, they may be supposed to have been damaged in some amount representing a small fraction of $100.

4. It is estimated that there are more than 180,000 Bankamericard holders of the defendant. At the minimum rate of $100 apiece, defendant's potential liability to the class of card holders would be at least $18,000,000 for each alleged violation of the act.

Judge Frankel concluded in the *Ratner* case, and Judge Edenfield concurred in *Rogers*, that (1) there is no affirmative need or justification for a class action proceeding in the circumstances of a Truth in Lending Act case; and (2) that the allowance of thousands of minimum recoveries like plaintiffs' would carry to an absurd and stultifying extreme the specific and essentially inconsistent remedy Congress prescribed as the means of private enforcement. Exercising that "considerable discretion of a pragmatic nature" required by the "broad and open-ended terms" of Rule 23, the two courts determined that a class action was not "superior to" the statutory method of individual recovery.

In addition to the reasons given by the two learned judges in the *Ratner* and *Rogers* cases, there are further reasons, inherent in the purposes of a class action, which, in the opinion of this court, militate against finding the class action "superior to" the statutory method of individual recovery. An examination of the application and effect of the 1966 amendment to Rule 23 will perhaps clarify why the class action is not well suited to the instant case.

It was none other than Judge Frankel who made the following preliminary observation concerning the amended Rule 23:

"The Rule—quite deliberately, I think —tends to ask more questions than it answers. It is neither a set of prescriptions nor a blue print. It is, rather, a broad outline of general policies and directions. As the commentators have said, it confides to the district judges a broad range of discretion." Marvin E. Frankel, "Some Preliminary Observations Concerning Civil Rule 23," 43 F.R.D. 39 (1967).

In a similar vein, the Tenth Circuit Court of Appeals has held:

"The question of whether to allow a suit to proceed as a class action is one primarily for the determination of the trial judge. If he applies the correct criteria to the facts of the case, the decision should be considered to be within his discretion. City of New York v. International Pipe and Ceramics Corp., 410 F.2d 295, 298 (2d Cir. 1969)." Gold Strike Stamp Company v. Christensen, 436 F.2d 791, at pp. 792–793 (10th Cir. 1970).

The courts have thus had wide latitude in developing the rule in the last half decade. Recently, a special committee on Rule 23 of the Federal Rules of Civil Procedure of the American College of Trial Lawyers filed its report and recommendations, based on the uses and abuses of the rule in actual practice. This court is in substantial agreement with the conclusion reached by the special committee:

" . . . The original avowed twofold purpose of the (b) (3) action was 'to achieve economies of time, effort and expense' and to promote uniformity of decision 'without sacrificing procedural fairness.' [Advisory Comm. Note, 39 F.R.D. 98, 102–03 (1966).] Judicial opinions added a third, saying that the class action 'provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individu-

al litigation.' [Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 560 (2d Cir. 1968). See Ford, Federal Rule 23: A Device for Aiding the Small Claimant, 10 B.C. Ind. & Com.L.Rev. 515 (1968).]

The conclusion of this Committee is that Rule 23, as written and as applied over the last half decade, has failed to achieve its purposes. We suggest that in the areas of judicial economy and fairness to the parties, the experienced results have been directly contrary to the intended purposes. The (b) (3) class suit has mandated heavy expenditures of judicial time, effort and expense. The expenditures have been sustained only by sacrificing procedural and substantive fairness to the party opposing the class. Nor does it appear that these burdens can in any sense be justified by the limited benefits accruing to class claimants." Report and Recommendations of the Special Committee on Rule 23 of the Federal Rules of Civil Procedure, American College of Trial Lawyers (March 15, 1972), at 5–6.

In reaching this conclusion, the committee considered certain alleged advantages and disadvantages of Rule 23 which have direct application to the issue in the instant case, namely, whether a class action is "superior to" the statutory remedy provided in the Truth in Lending Act. Plaintiffs have asserted in this case, for example, that defendant wants "to bar the door to justice to small claims." Indeed some courts and commentators have felt that one of the main purposes of the amended rule was to keep the door open for the small claimant. [See Eisen v. Carlisle & Jacquelin, *supra*; Ford, Federal Rule 23: A Device for Aiding the Small Claimant, *supra*; and the report of a conversation with Professor Kaplan contained in Frankel, Amended Rule 23 from a Judge's Point of View, 32 Antitrust L.J. 295, 299 (1966).]

In actual practice, however, it is at least debatable whether the small claimant has received much benefit from amended Rule 23. Judge Lumbard, dissenting in the Eisen case, 391 F.2d 555 (2d Cir. 1968), caustically remarked that "the only persons to gain from a class suit are not potential plaintiffs, but the attorneys who will represent them." This view finds some support in Judge Edenfield's forthright comments on the abuse of the rule in Buford v. American Finance Company, 333 F. Supp. 1243 (N.D.Ga.1971):

"Today, however, many claims which simply did not exist have been brought to life by our courts through the judicial act of allowing a class action to be maintained. Although some courts say these claims are not brought because plaintiffs believe the potential recovery would be too small to justify the time and expense of litigation, the plain truth is that in many cases Rule 23(b) (3) is being used as a device for the solicitation of litigation. This is clearly an 'undesirable result' which cannot be tolerated." (at 1251)

Perhaps the desire to aid the small claimant is one of the reasons courts have adopted liberal rules of construction relating to Rule 23. See Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968) (a securities case). It might be well to note in this respect, however, the advice of Professor Wright:

"But if they encourage courts to allow maintenance of class actions in controversies that are unmanageable by this device, the rule may come into disrepute even for cases to which it is well suited." C. Wright, Law of Federal Courts 307 (2d ed. 1970).

The same liberal construction has been applied to the statutory procedure in Truth in Lending cases. As Judge Frankel observed when considering the species of "private attorney general" created by the act's § 130(e), 15 U.S.C.

§ 1640(e): "The language should be construed liberally in light of its broadly remedial purpose." Ratner v. Chemical Bank New York Trust Company, 329 F. Supp. 270, 280 (S.D.N.Y.1971). Hence there has been an inevitable conflict between the class action and the statutory procedure, which has been reflected in widely divergent results in the courts.

Another argument advanced by plaintiffs and by supporters of Rule 23 is that its *in terrorem* effect provides a deterrent to violation of the law. The potential recovery in this case—calculated to be at least $18,000,000 for each alleged violation of the act—would certainly be a powerful deterrent to violations of the Truth in Lending Act. On the other hand, it must be questioned whether the deterrent effect of the rule should be granted such high priority. "The cost in judicial time and consequent impairment of rights of other litigants appears too high a price to pay for deterrence which can be effected through alternative means." Report and Recommendations of the Special Committee on Rule 23, *supra*, at 22. See also, Handler, The Shift From Substantive to Procedural Innovations in Antitrust Suits—The Twenty-Third Annual Antitrust Review, 71 Colum.L.Rev. note 5 at 9 (1971). Furthermore, it would manifestly appear that Congress intended the $100 minimum statutory damages serve as a deterrent, especially when combined with the species of "private attorney general" of § 130(e). Once again, there is a basic inconsistency, recognized by the courts in the *Ratner* and *Rogers* cases, between the class action and the statutory procedure.

Upon the persuasive reasoning of the *Ratner* and *Rogers* cases and the facts and circumstances of the instant case, and in light of the purposes of the class action rule, this court holds that plaintiffs' application for an order designating this a class action be denied.

It is so ordered.