**Armond D. ARNSON, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Civ. A. No. C71–1266.**

United States District Court,
N. D. Ohio, E. D.

May 31, 1974.

---

Thomas L. Dettelbach, Bernard J. Stuplinski, Kahn, Kleinman, Yanowitz & Arnson, Cleveland, Ohio, for plaintiff.

Victor E. DeMarco, James C. Sennett, Jr., Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

This is an action arising under the Economic Stabilization Act of 1970, as amended (P.L. 92–210, 85 Stat. 743; December 22, 1971), 12 U.S.C. § 1904 note (the Act) and Exec. Order No. 11615, 3 C.F.R.1971 Comp., p. 199. Jurisdiction of the Court is invoked pursuant to §§ 210 and 211(a) of said Act. Counts 1 and 2 of plaintiff's Complaint allege claims for breach of contract and fraud and deceit. Counts 3 and 4 of the Complaint charge violations of the Act allegedly arising out of price overcharges by the defendant.

Defendant General Motors Corporation has moved the Court pursuant to Rule 23(c)(1), Federal Rules of Civil Procedure, for an Order denying certification of this matter as a class action. Defendant has further moved the Court for an Order granting summary judgment on Counts 3 and 4 of plaintiff's Complaint and dismissing Counts 1 and 2 of the Complaint. Plaintiff has filed a Motion to Certify as Class Action; Motion for an Order Compelling Discovery; and Motion for Leave to File a Second Supplemental Brief in Opposition to the Motion for Summary Judgment.

Briefly summarized, plaintiff charges that the defendant through its alleged agents, General Motor dealerships specifically including Blaushild Chevrolet, Inc., David Blaushild, owner and operator of the dealership and Ronald Brolin, a salesman for Blaushild Chevrolet, Inc., induced the plaintiff and other members of a purported class to purchase automobiles manufactured by the defendant during Phase I of the Wage-Price controls as established by Executive Order No. 11615 while at the same time it deliberately slowed production in an effort to frustrate deliveries of automobiles until the implementation of Phase II controls when prices could be and were raised for those who had ordered cars under Phase I.

In the alternative, the plaintiff further alleges that the price increase on his automobile exceeded the 2½% increase permitted by the Price Commission.

Plaintiff seeks damages for himself and an estimated class of 300,000 similarly situated purchasers in the amount of $1,000 per person as provided by § 210 of the Act and, in the alternative, on Counts 1 and 2, damages equal to the amount of the price increase plus 6% interest from the date of payment and the recovery of reasonable attorneys' fees and costs of the action.

Section 210 of the Economic Stabilization Act Amendments of 1971 provide:

. . . (b) In any action brought under subsection (a) against any person renting property or selling goods or services who is found to have overcharged the plaintiff, the court may, in its discretion, award the plaintiff reasonable attorney's fees and costs, plus whichever of the following sums is greater:

> (1) an amount not more than three times the amount of the overcharge upon which the action is based, or
>
> (2) not less than $100 or more than $1,000;

except that in any case where the defendant establishes that the overcharge was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to the avoidance of such error the liability of the defendant shall be limited to the amount of the overcharge. . . .

■ Elementary principles of statutory construction require this Court to proceed on the assumption that the legislative purpose is expressed by the ordinary meaning of the words used. Obvious from the language of § 210(b) is that the thrust of a claim for damages involving the sale of goods is an overcharge made by a seller to a plaintiff. The language clearly indicates that Congress intended to restrict the purchaser to an action against his immediate seller and did not allow for the recovery of damages from an overcharge instituted by any previous seller.

A review of the legislative history of the Act, including minutes of hearings conducted before the House and Senate Banking Committees, the House and Senate Reports, the Conference Reports, and debates cited in the Congressional Record of the Ninety-Second Congress generally reflect that § 210 was inserted to provide a private remedy for consumers to supplement governmental enforcement of the Act. Thus, the Act authorizes treble damages for wilful overcharges, making the consumer, in effect, a private attorney general. *See general-*

ly, U.S.Code Cong. and Admin.News, 92nd Congress, 1st Session 1971 at pp. 2283–2312.

The legislative materials indicate the concern of Congress with consumer actions directed against retailers and merchants. There is no discussion concerning consumer suits against manufacturers. Therefore, in view of the foregoing, the more practical and workable interpretation of § 210 is to limit standing in damage actions to purchasers of goods who have been overcharged by their immediate sellers.

Plaintiff's contention that § 210(a) alone affords him a cause of action against any seller is without merit. The section reads as follows:

  (a) any person suffering legal wrong because of any act or practice arising out of this title, . . . may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, .including an action for a declaratory judgment, writ of injunction . . . and/or damages . . .

■ Such reliance is unfounded since it is clear that the language in § 210(a) providing for a damage suit by a person suffering a "legal wrong" must be read in conjunction with § 210(b) which specifically sets out the cause of action and specifically recites the jurisdictional grant found in subsection (a). The Temporary Emergency Court of Appeals rejected a similar argument in Manning v. University of Notre Dame, 484 F.2d 501 (Em.App., 1973):

We find less than convincing the argument, . . . that we should overlook the wording of Section 210(b)(2) on the theory that having "suffered legal wrong" appellant can recover by virtue of Section 210(a). . . . 484 F.2d at 504.

Thus § 210(b) provides the substantive remedy for a damage action involving illegal price overcharges on sales of goods, and no other remedy arises solely by reason of subsection (a), which is solely jurisdictional.

The Court finds that the purchase agreement for plaintiff's automobile, on its face, reflects the seller as Blaushild Chevrolet, Inc. and not the defendant, General Motors Corporation. The term "seller" in the agreement clearly refers to the dealer and not to the "manufacturer" or "factory". The agreement was executed by plaintiff and Blaushild Chevrolet, Inc. The consideration was formulated between those two parties and there is no allegation that General Motors dealt directly with the plaintiff in any manner. Thus absent any privity between plaintiff and defendant, it is apparent that defendant is not a seller within the scope of the Act as it relates to this transaction.

Plaintiff urges the Court, however, to find that the control exercised by General Motors over its authorized dealers was sufficient to establish an agency relationship with Blaushild Chevrolet, Inc. Plaintiff specifically contends that when the defendant advanced the price of Chevrolets, dealers had no choice but to pass this price increase on to consumers resulting in a violation of the Act by defendant. The Court is of the opinion that, as a matter of law, no agency relationship existed and, therefore, the defendant is not the seller of the vehicle to the plaintiff within the meaning of the Act. Although few courts have decided the precise question raised herein, the weight of authority, including decisions reviewing similar dealer agreements and dealership operations, support the view that a franchised automobile dealer, with regard to the sale of new vehicles, is an independent merchant and not an agent of the manufacturer. *See*, S. B. McMaster, Inc. v. Chevrolet Motor Co., 3 F.2d 469 (E.D.S. C.1925); Washington v. Courtesy Motor Sales, Inc., 48 Ill.App.2d 380, 199 N.E.2d 263 (1964); Smith v. Ford Motor Co., 327 S.W.2d 535, 538 (Mo.Ct.App.1959); Kaden v. Moon Motor Car Co., 26 S.W. 2d 812 (Mo.Ct.App.1930); Burkhalter v. Ford Motor Co., 29 Ga.App. 592, 116 S. E. 333 (1923); *see, also,* Stansifer v. Chrysler Motors Corp., 487 F.2d 59, 64–66 (9th Cir. 1973); United States v.

General Motors Corp., 121 F.2d 376 (7th Cir. 1941), cert. denied, 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497 (1941); Quijada Corp. v. General Motors Corp., 253 A.2d 538, 540–541 (D.C.App.1969); Harley v. General Motors Corp., 97 Ga.App. 348, 103 S.E.2d 191, 194 (1958); Westerdale v. Kaiser-Frazer Corp., 6 N.J. 571, 80 A.2d 91, 94 (1951).

■ It is axiomatic that in order to establish an agency relationship there must be a relationship between one party and another under which one acts for and in the place of another. An important element in determining the existence of an agency relationship is the existence of some degree of control over the conduct and activities of the supposed agent. *See generally*, Williston, On Contracts, third edition. The above cited decisions have concluded that the manufacturer has neither the authority nor the right to, and does not in fact, control the conduct of the dealer over daily operations.

■ The dealer agreement, "Chevrolet Car and Standard Truck Dealer Sales and Service Agreement", governs the relationship between Blaushild Chevrolet, Inc. and Chevrolet Motor Division, General Motors Corporation. The agreement, effective from November 1, 1970 until October 31, 1975, sets forth the rights and privileges of the parties under the franchise. It permits the dealer to conduct Chevrolet dealership operations and to purchase Chevrolet Motor vehicles, parts, and accessories for sale or for use in its dealership operations. While not controlling, the agreement specifically disclaims any agency relationship by providing in part:

> 17. *Dealer Not Made Agent or Legal Representative of Chevrolet*
>
> This Agreement, of which these Additional Provisions are a part, does not constitute Dealer the agent or legal representative of Chevrolet for any purpose whatsoever. Dealer is not granted any express or implied right or authority to assume or to create any obligation or responsibility in behalf of or in the name of Chevrolet or to bind Chevrolet in any manner or thing whatsoever.

Upon examination of the foregoing agreement and those portions of the record concerning the actual operation of the Blaushild dealership, the Court finds the following uncontradicted facts:

1. General Motors Corporation does not own stock in the dealership, which is an Ohio corporation wholly owned by David Blaushild;

2. Mr. Blaushild controls the hiring, firing, and supervision of all Blaushild Chevrolet employees;

3. Neither Mr. Blaushild nor any of his personnel are employees of General Motors;

4. The terms of employment, including wages and other employee benefits, are negotiated and determined by Mr. Blaushild who owns, controls and manages all activities on the premises including all sales activity;

5. General Motors sells motor vehicles, parts, and accessories to its franchised dealers at prices established under the dealer agreement, and the dealers in turn resell them for their own account to the public at prices established by acknowledged bargaining between the individual dealer and consumer;

6. Blaushild Chevrolet reimburses General Motors for the vehicles it purchases from the company upon receipt thereof, regardless of whether the vehicle has been sold by the dealer;

7. The defendant does not retain title to vehicles, parts or accessories which are sold to its dealer;

8. The form and content of the purchase agreement utilized by the dealer is the product of the dealers judgment, without input from General Motors;

9. General Motors does not share in the profits or losses realized

from the operation of the dealership;

10. Blaushild Chevrolet maintains and finances its own local advertising program;

11. The final price agreed upon between dealer and customer is one established solely on the basis of negotiations between customer and the dealer-salesman. General Motors neither participates in the dealer-consumer price negotiations nor does it dictate terms and conditions of sale or payment.

Thus in applying a price increase which was originally instituted by General Motors to the retail purchaser, the dealer did not act in a representative capacity but rather acted independently and on behalf of its own interest in maintaining a constant profit margin. The record reflects in absence of any facts indicating any control by General Motors over the sale price between dealer and customer. The deposition testimony of David Blaushild, for example, indicates a decision not to pass on the price increase in 5% of the cases.

In view of the foregoing, the Court finds that the decision to pass on the increased price to its customers was an independent one and that as a matter of law no agency relationship exists between the manufacturer and the dealer.

Accordingly, plaintiff's Motion for Leave to File a Second Supplemental Brief in Opposition to the Motion for Summary Judgment is hereby denied; and, for the reasons aforesaid, defendant's Motion for Summary Judgment is granted on Counts 3 and 4 of the Complaint. Fed.R.Civ.P. 56.

■ As to Counts 1 and 2 which allege breach of contract, fraud and deceit under state law, it is apparent that no independent grounds for this Court's jurisdiction are present: the jurisdictional amount in controversy of $10,000 is not satisfied on the face of the Complaint. Even if the Court permits plaintiff to proceed on behalf of a class, a plaintiff cannot aggregate the separate and distinct claims of the purported members of the class in order to satisfy the jurisdictional requirement. 28 U.S. C. § 1332(a). *See,* Zahn v. Int'l. Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L. Ed.2d 511 (1973); Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Where no independent grounds for federal jurisdiction exist, it is well-settled that state claims should be dismissed in this Court if the federal claims are not "substantial" enough to withstand disposition prior to trial. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963, 970–971 (2d Cir. 1969), cert. denied, 399 U. S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970); Levine v. J. N. Russell & Co., 318 F.Supp. 1162, 1167 (N.D.Ohio 1969), aff'd 433 F.2d 763 (6th Cir. 1970); Heyman v. Heyman, 356 F.Supp. 958, 961 (S.D.N.Y.1973); Wieboldt v. Metz, 355 F.Supp. 255, 261 (S.D.N.Y. 1973).

Accordingly, the Motion to Dismiss Counts 1 and 2 of the Complaint is hereby granted. Fed.R.Civ.P. 12(b)(1).

■ The Court further finds that a class action under Rule 23, Fed.R.Civ.P. is not proper under the Economic Stabilization Act. The Court concludes that the Act is essentially analogous to the provisions of the Truth-in-Lending Act. 15 U.S.C. § 1601 et seq., which provides for civil liability upon the failure to disclose credit information in a consumer credit transaction, and the recovery of twice the finance charge with a statutory minimum recovery of $100 and a maximum of $1,000 plus attorneys' fees and costs. The weight of recent authority construing the Truth-in-Lending Act holds that a class action is unnecessary since the statute provides adequate individual remedies. Ratner v. Chemical Bank N. Y. Trust Co., 54 F.R.D. 412 (S.D.N.Y.1972); Lindig v. City Nat'l Bank, 59 F.R.D. 154 (S.D.Ohio 1973); Hoffman v. Charnita, Inc., 58 F.R.D. 86 (M.D.Pa.1973); Alsup v. Montgomery Ward & Co., 57 F.R.D. 89 (N.D.Cal. 1972); Shields v. First Nat'l Bank, 56

F.R.D. 442 (D.Ariz.1972); Wilcox v. Commerce Bank, 55 F.R.D. 134 (D.Kan. 1972); aff'd 474 F.2d 336 (10th Cir. 1973); Rogers v. Coburn Finance Corp., 53 F.R.D. 182 (N.D.Ga.1972); Kroll v. Cities Service Oil Co., 352 F.Supp. 357 (N.D.Ill.1972).

With the Economic Stabilization Act, Congress similarly fashioned a remedy encouraging individual suits by persons who have been overcharged on sales of goods or rental of property, eliminating the jurisdictional amount requirement and providing for attorneys' fees, costs and either treble damages or an award not less than $100 nor more than $1,000. The Act is drafted to provide incentive for individuals to enforce its provisions without resort to a class action. The Court, therefore, concludes that a class action under the Act is not superior to individual suits.

In view of the above rulings, judgment is hereby entered in favor of defendants on Counts 3 and 4 of the Complaint. Counts 1 and 2 are dismissed for lack of subject matter jurisdiction. Plaintiff's Motion for an Order compelling discovery is moot.

It is so ordered.