Frederick **SOSKEL** and Milton A. **Woocher**, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**TEXACO INC.,** Defendant.

No. 80 Civ. 1272 (LBS).

United States District Court,
S. D. New York.

May 21, 1981.

Elliot D. Woocher, White Plains, N. Y., for plaintiffs.

Robert F. McGinnis, Charles F. Kazlauskas, Jr., White Plains, N. Y., for defendant.

## OPINION

SAND, District Judge.

Defendant Texaco Inc. (hereinafter "Texaco") has moved for summary judgment in this action brought *inter alia* under the Emergency Petroleum Allocation Act of 1970, 15 U.S.C. § 751 *et seq.* (hereinafter "EPAA"), and regulations adopted thereunder, and the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 Note (hereinafter "ESA"). Defendant also asserts that the complaint fails to state a claim and should be dismissed. Plaintiffs are holders of Texaco credit cards and they sue on behalf of themselves and an as yet uncertified class of other card holders, *see* note 2 *infra*. The gravamen of plaintiffs' suit is that they have been charged at Texaco service stations a price for gasoline which exceeds the ceiling established by federal law.

The theory of defendant's summary judgment motion is that under ESA § 210 and the doctrine of *Illinois Brick v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), plaintiffs are restricted to suing the immediate seller of the gasoline and that it is Texaco's franchisees and distributors, rather than Texaco itself, which stand in that relation to plaintiffs. Defendant claims there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.

However, we find there are material issues of fact as to the extent and nature of Texaco's involvement in the alleged overcharges and as to whether Texaco's franchisees and distributors were Texaco's agents, such that Texaco should be considered a seller within the meaning of ESA § 210. Thus, even if we accept, *arguendo*, defendant's construction of ESA § 210, reading only § 210(b) and not § 210(a) as stating a cause of action and conferring standing, and reading § 210(b) as restricting an overcharge action to suit "against any person renting property or selling goods or services who is found to have overcharged the plaintiff," the plaintiffs in this case have made a sufficient showing to survive the summary judgment motion on this point.

Plaintiffs allege that most of the Texaco service stations alleged to have overcharged are owned or controlled by defendant, and that "principles of agency, enterprise liability and the joint liability of those acting in concert" provide a basis for defendant liability. Plaintiffs' Memorandum at 2 (footnote omitted). Plaintiffs state that, "[t]hrough the grant of a franchise [Texaco] 'authorizes others',—'Texaco Retailers'—to 'operate these stations under the Texaco name'." *Id.* at 7 (citation to record omitted). Plaintiffs further state that Texaco gives counselling and assistance to its franchisees, including counselling on pricing. *Id.* at 7–8, 16 n.* (with citations to record). Moreover, the franchise agreement, which, along with the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.*, governs the franchise relationship, imposes obligations on the franchisee. Texaco is empowered to terminate the franchise, if those obligations are not fulfilled, and one obligation incumbent upon the franchisee is not to "use or permit the station to be used for any 'unlawful or offensive purpose', or [to] violate or permit any of their employees to violate any law 'applicable to the service station business or the goods, services or facilities on the premises.'" *Id.* at 10 (citations to record omitted). Plaintiffs allege that defendant has failed to take such action despite overcharging.

In addition, plaintiffs assert that, "Texaco issues credit cards to consumers pursuant to agreements which provide, in effect, that the consumer can assert against Texaco any claims it may have against a seller of products purchased through the use of the card." *Id.* at 11 (citation to record omit-

ted). Moreover, "charges incurred in credit card transactions are collected by Texaco directly from its credit card customers. A customer's failure to make timely payment results in the imposition of a finance charge." *Id.* at 12.

Defendant's arguments as to the character of Texaco's relationship with its franchisees and others, and its degree of control and obligation regarding pricing, only serve to convince us that there are genuine issues of material fact. Moreover, the case on which Texaco relies, *Arnson v. General Motors Corp.*, 377 F.Supp. 209 (N.D.Ohio 1974), does not help defendant. In that case, "plaintiff charge[d] that the defendant through its alleged agents, General Motor [*sic*] dealerships," manipulated the price of automobiles in violation of ESA, and related authority. *Id.* at 211. The court found that the plaintiff could not sue the manufacturer, General Motors. However, in that case, the court stated that,

> The consideration was formulated between those two parties [, purchaser and dealer,] and there is no allegation that General Motors dealt directly with the plaintiff in any manner. Thus absent any privity between plaintiff and defendant, it is apparent that defendant is not a seller within the scope of the Act as it relates to this transaction.

*Id.* at 212. However, in the case at hand, there are allegations of direct dealing between defendant and plaintiffs, as we have indicated above. Moreover, the *Arnson* court said:

> Plaintiff urges the Court ... to find that the control exercised by General Motors over its authorized dealers was sufficient to establish an agency relationship with [the dealer].... The Court is of the opinion that, as a matter of law, no agency relationship existed and, therefore, the defendant is not the seller of the

vehicle to the plaintiff within the meaning of the Act. Although few courts have decided the precise question raised herein, the weight of authority, including decisions reviewing similar dealer agreements and dealership operations, support the view that a franchised automobile dealer, with regard to the sale of new vehicles, is an independent merchant and not an agent of the manufacturer.

*Id.* (citations omitted). Thus, the court did not rule that an agency relationship fails to expand the scope of who is a § 210 "seller", but rather that there was no such agency relationship in that case, which, moreover, dealt with a certain kind of automobile dealership rather than the relationship at issue here.[1]

Defendant also argues that the doctrine of *Illinois Brick* operates as a bar in this case because it prohibits suit by an indirect purchaser, and plaintiffs did not purchase directly from Texaco. However, we reject this argument and conclude the doctrine is not applicable here. Because we have found that there is a material issue of fact as to whether Texaco was a seller to plaintiffs, an issue remains as to whether plaintiffs were direct purchasers in relation to Texaco. If plaintiffs thus were not indirect purchasers, the *Illinois Brick* doctrine of course would not apply.

Moreover, the rationale of the *Illinois Brick* doctrine does not apply here. That doctrine applies where there has first occurred a transaction between an indirect seller and a direct seller which involves, say, price-fixing, and subsequently another transaction between the direct seller and the plaintiff purchaser which passes along the consequences of the first price-fixing. In such a case, the courts have confined the cause of action against the initial (indirect) seller to the party which purchased from that seller (with some exceptions), thus

---

1. Defendant also argues that plaintiffs have failed to fulfill the requirements of § 210(b) by not claiming for a refund of the overcharge before suing. However, § 210(b) is worded in such a fashion that this requirement only applies "where the overcharge is not willful," and plaintiffs in this case have alleged willfulness.

We also are not persuaded by defendant's claim that plaintiffs, in order to escape the refund claim procedure of § 210(b) must have pleaded not only that the overcharge was willful, but that it was "criminally willful in violation of § 208," Defendant's Memorandum at 11.

avoiding intractable computational problems.

However, the plaintiffs in the case at hand appear not to allege a pricing violation in a prior transaction to which they were not a party, the consequences of which were then passed on to them. Rather, they allege that the pricing violation took place in the sale of gas to them, and that Texaco participated in and was otherwise responsible for the violation which took place in that transaction. Accordingly, the *Illinois Brick* rationale does not apply.

Defendant also argues that plaintiffs have not demonstrated that they have been overcharged. However, we find that plaintiffs have raised a genuine issue as to whether they have been overcharged.

Accordingly, we reject defendant's further argument that portions of the complaint fail to state a claim and must be dismissed under Fed.R.Civ.P. 12(b)(6) because such portions are premised on the overcharge claim, which defendant says fails for the reasons considered above. Defendant further claims that Count VI of the complaint must be dismissed also because plaintiffs never complained about the lack of notices. However, defendant cites no authority for a requirement that plaintiffs must have complained about the lack of notices prior to suit. This count will not be dismissed. Finally, defendant urges us to dismiss Count VII, a claim under 15 U.S.C. § 1125, which defendant characterizes as complaining, "that Texaco in some mythical manner violated the 'Federal Trademark Laws.'" Defendant's Memorandum at 45. Here again, defendant cites no authority and engages in no substantial discussion of the claim.

Finally, defendant asserts generally that plaintiffs have set forth mere allegations and no specific facts and credible evidence showing there are genuine issues for trial. We do not find this to be the case.[2]

Defendant's motion is denied.

SO ORDERED.

---

**2.** Defendant has included in its memoranda on this motion arguments going to the appropriateness of class certification in this case. However, we deem the issue not properly raised by this motion. On May 22, 1980, this Court granted without opposition plaintiffs' motion extending the time to move for class certification to a date to be set thereafter by the Court. No date has been set and neither party has as yet formally made a motion with respect to class certification.