Joseph **STERTZ** and Louis De Nicola, et al., on their behalf and as representatives of all purchasers of oil and petroleum products from the Defendants, Plaintiffs,

v.

**GULF OIL CORPORATION**, Defendant,

and

James Schlesinger, Secretary of the Department of Energy, As Stakeholder.

No. 78 Civ. 1813.

United States District Court, E. D. New York.

Aug. 4, 1982.

Null & Null, P.C., Garden City, N.Y., for plaintiffs.

Lord, Day & Lord, Michael Murphy, New York City, for defendant.

Asst. U. S. Atty. Ben Wiles, E.D.N.Y., Brooklyn, N.Y., for stakeholder.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiffs in this action allege that they bought refined products from the defendant, Gulf Oil Corporation ("Gulf"), during the period 1973 through 1975. They claim that Gulf wilfully overcharged them for these products, in violation of Section 210 of the Economic Stabilization Act, 12 U.S.C. § 1904 (note) ("ESA"). Plaintiffs seek to recover the amount of the alleged overcharge, trebled, as allowed under certain circumstances by Section 210 of the ESA.

Plaintiffs now move to certify the class they wish to represent. Although this class was initially defined as all direct purchasers from Gulf of refined products during the period 1973 to 1975, after a lengthy exchange of memoranda the proposed class has been narrowed to include only the following: all those direct purchasers of refined petroleum products from Gulf during the period 1973–75, except consumer credit-card purchasers of gasoline and gasoline products and purchasers through Gulf consignees and Gulf-owned gas stations.[1] For the reasons that follow, the proposed class is certified pursuant to Fed.R.Civ.P. 23(c)(1).

### Discussion

Governing this Court in determining whether to certify the proposed class are

---

1. Also during this exchange of memoranda, one of the named plaintiffs, Joseph Weiner, with-

drew as a class representative.

the prerequisites and considerations enumerated in Fed.R.Civ.P. 23. Before a class can be certified, the Court must be satisfied that the prerequisites of Rule 23(a) are met, and that the action fits within one of the subdivisions contained in Rule 23(b).

Plaintiffs argue that the fourfold test embodied in Rule 23(a), involving "numerosity," "commonality," "typicality," and "adequacy of representation," is met in the instant case. As to "numerosity," the plaintiffs argue that the class numbers in the tens of thousands, rendering "joinder of all members ... impracticable." As to "commonality," the plaintiffs allege that questions of law and fact common to all class members exist with respect to whether or not Gulf charged prices in excess of those legally permitted. As to "typicality," the plaintiffs assert that all members of the proposed class have identical interests in that they all were direct purchasers from Gulf who were allegedly overcharged for their products. As to "adequacy of representation," the plaintiffs maintain that they are represented by experienced counsel thoroughly familiar with class action litigation, and that there are no actual or potential conflicts of interest between the members of the proposed class and the representative parties.

Plaintiffs argue further that the action satisfies Rule 23(b)(3) in that questions of law and fact common to members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods of adjudicating the controversy. Plaintiffs maintain that the overriding common issue of law and fact is whether Gulf overcharged its affiliates in connection with the transfer price of crude oil. As to the superiority of the class action method of adjudicating this controversy, the plaintiffs argue that the large number of potential claim-

ants and the predominance of common questions render it judicially economical to resolve the suit in one forum. Plaintiffs also point out that the cost and complexity of the litigation would discourage those with smaller claims from asserting their rights.

The defendant raises a two-pronged attack on the propriety of certifying the proposed class. The main thrust of the defendant's argument is that a class action is not a superior method of adjudicating this controversy because Section 210 of the ESA contains sufficient incentives to induce individual suits. The second aspect of the defendant's argument is that the class should not be certified because the interests of the proposed class members are in conflict.[2]

These two arguments of the defendant will be considered in the discussion that follows. As to those prerequisites to class certification that the defendant has not challenged, the contentions of the plaintiff are accepted by this Court.

## I.

The defendant's first argument is that since the ESA contains incentives to promote individual suits, a class action is not a superior means, within the meaning of Rule 23(b)(3), of adjudicating the instant controversy. Under § 210 of the ESA, a plaintiff who proves that he was wilfully overcharged may recover "reasonable attorneys' fees and costs, in addition to whichever of the following sums is greater: (1) an amount not more than three times the amount of overcharge upon which the action is based; or (2) not less than $100 or more than $1,000." ESA § 210(b). Thus, under the ESA, a plaintiff who is overcharged even a minimal amount may recover up to $1,000 plus attorneys' fees and

2. The defendant originally argued as well that the class as first proposed should not be certified because it would be unmanageable. The defendant has not developed this argument as to the proposed class as narrowed, and this Court concludes that this smaller class is in-

deed manageable. The defendant has conceded in its brief and affidavit that this class could be identified for a cost of $150,000. In the context of this suit in which the defendant faces a liability in excess of $200,000,000, such an amount is not overwhelming.

costs. The defendant argues that this statutory scheme provides such a strong incentive for individual suits that class actions are not necessary under the Act.

In support of this argument the defendant relies primarily on *Arnson v. General Motors Corp.*, 377 F.Supp. 209 (N.D. Ohio 1974). In *Arnson*, the plaintiffs brought a class action suit under § 210 of ESA alleging that the defendant had committed wilful overcharges in the sale of automobiles. The plaintiffs subsequently moved to certify the class, and the defendant cross-moved to dismiss the action on the ground that the prices complained of had been set by independent dealerships who were not named as defendants. Although the court granted the defendant's motion to dismiss, it went on to determine that "a class action under Rule 23, Fed.R.Civ.P. is not proper under the Economic Stabilization Act." *Id.* at 214. The court reasoned: "The Act is drafted to provide incentive for individuals to enforce its provisions without resort to a class action. The Court, therefore, concludes that a class action under the Act is not superior to individual suits." *Id.* at 215.

The *Arnson* court in reaching its decision relied primarily upon an analogy to cases decided under the Truth-In-Lending Act ("TILA"). Like the ESA, the TILA provides for the recovery of $100 to $1,000, plus attorneys' fees and costs, regardless of the amount of the actual loss suffered by the plaintiff. Because of this incentive for individual suits, various courts prior to *Arnson* had declined to certify proposed classes in TILA suits. *See, e.g., Ratner v. Chemical Bank N.Y. Trust Co.*, 54 F.R.D. 412 (S.D.N.Y.1972); *Lindig v. City National Bank*, 59 F.R.D. 154 (S.D.Ohio 1973).

The plaintiff argues that the reasoning embodied in *Arnson* should not be followed here, and this Court agrees. First, the discussion of the *Arnson* court regarding the class certification issue was mere dicta, since the court already had determined to dismiss the plaintiff's complaint. Second, to the extent that *Arnson* can be interpreted as advocating a *per se* rule prohibiting class action suits in ESA cases, the court's reliance on the TILA cases is misplaced.

An analysis of the cases denying class certification under the TILA reveals that rather than adopting a *per se* rule, each case was decided on the basis of its own particular facts.[3] These cases were predominantly actions in which the named plaintiffs, as well as all of the proposed class members, had suffered only nominal damages. Because of the large size of the class and the minimum recovery of $100 per class member provided for under the TILA, however, the defendants would have been threatened with staggering liability if the class action had proceeded. It was this threat of drastically escalated liability that led the courts denying class certification to conclude that a class action was not a superior method of adjudicating the TILA controversy. *See, e.g., Lindig v. City National Bank*, 59 F.R.D. 154 (S.D.Ohio 1973); *Alsup v. Montgomery Ward & Co.*, 57 F.R.D. 89 (N.D.Cal.1972); *Wilcox v. Commerce Bank*, 55 F.R.D. 134 (D.Kansas 1972), *aff'd* 474 F.2d 336 (10th Cir. 1973); *Ratner v. Chemical Bank N.Y. Trust Co.*, supra.[4]

Just as these TILA cases were determined on the basis of the particular facts involved, this Court believes that class actions brought under the ESA similarly should be afforded case-by-case determina-

---

3. For example, in the leading case of *Ratner v. Chemical Bank N.Y. Trust Co.*, 54 F.R.D. 412 (S.D.N.Y.1972), the court specifically pointed out that it was ruling "only upon the case at hand, *id.* at 413, and was not proposing any "sweeping pronouncements as to whether class actions under Rule 23 must always or may never be deemed proper [under the TILA]," *id.*

4. Subsequent to *Arnson* and the above-cited cases, the TILA was amended to expressly provide for class action suits. *See Agostine v. Sidcon Corp.*, 69 F.R.D. 437 (E.D.Pa.1975). This amendment responded to the threat of grossly disproportionate liability by removing the $100 minimum recovery and placing a limit on the maximum recovery in class action suits. *See* 15 U.S.C. § 1640(a).

tion. This conclusion is supported by other cases brought under the ESA in which classes have been certified in spite of *Arnson*. *See Evanson v. Union Oil*, CCH Energy Mgmt. Rptr. ¶ 26,056 (D.Minn.1976), later proceedings, CCH Energy Mgmt. Rptr. ¶ 26,077 (D.Minn.1977); *Barr v. WUI/TAS, Inc.*, 66 F.R.D. 109 (S.D.N.Y.1975) (ESA and antitrust claims); *Jennings Oil Co., Inc. v. Mobil Oil Corp.*, 80 F.R.D. 124 (S.D.N.Y. 1978) (ESA and antitrust claims; ESA claims dismissed with leave to amend). To the extent that *Arnson* can be interpreted as contrary to this position, it is not followed here.

■ Under the circumstances of the instant case, this Court concludes that a class action is a superior means of adjudicating the controversy. First, the large number of potential claimants and the complexity of the litigation render it judicially economical to adjudicate the merits of the claim of overcharging in one forum. Second, adjudicating the controversy through separate claims creates the risk of inconsistent results. As the court noted in *Evanson v. Union Oil Co.*, CCH Energy Mgmt. Rptr. ¶ 26,077, at p. 26,603 (D.Minn.1977): "The superiority of the class action over ·other methods of adjudication possible here is apparent. Rule 23(b)(3). The numbers of potential plaintiffs and the complexity of the statutory issues are such that leaving the matter to be disposed of through individual actions easily could result in a multiplicity of nonjoinable actions with confusingly inconsistent conclusions."

Third, although the ESA provides an incentive for individuals to litigate their claims, there remains the likelihood that the small purchaser will not make use of the available remedy because it is too burdensome. As the court noted in *Barr v. WUI/TAS, Inc.*, 66 F.R.D. 109, 116 (S.D.N.Y.1975): "It would certainly be more desir-

able to concentrate this litigation in one action and in one forum, and it would be naive in the extreme to believe that the $100 minimum recovery would be sufficient incentive for all of the class members to prosecute individual actions, even recognizing that they will recover attorneys' fees, if successful."

Finally, unlike the TILA cases discussed above, the plaintiffs in the proposed class all appear to have substantial claims at least exceeding the $100 minimum recovery provided for in the statute. *See* Defendant's "Memorandum On Behalf of Gulf Oil Corporation In Opposition to Class Certification" at p. 18. Thus, there is no danger that the defendants will be subjected to liability vastly in excess of the treble damages provided for in the statute.

For all of these reasons, this Court finds that a class action is a superior means of adjudicating the instant controversy. Fed. R.Civ.P. 23(b)(3).

## II.

■ The second ground advanced by the defendant for denying class certification is that the interests of the proposed class members are in conflict. *See Hansbury v. Lee*, 311 U.S. 32, 44–45, 61 S.Ct. 115, 119, 85 L.Ed. 22 (1940). The defendant's argument in this regard is twofold.

First, the defendant argues that the proposed class members will be in conflict over how to measure any overcharges that they may establish. In order to explain this potential conflict, it is necessary to provide some background detail regarding the plaintiff's theory of recovery.[5]

Under the ESA, and the implementing regulations issued pursuant thereto, 36 F.R. 22536, *et seq.*, a refiner was permitted to charge a price for its refined products which was no higher than (i) the price at

---

5. The ensuing discussion of the plaintiffs' claims is based solely on the defendant's brief in opposition to class certification. As this Court is concerned at this time with the class certification issue only, no opinion is now expressed as to the accuracy of the defendant's statutory construction.

which the product was sold on May 15, 1973, plus (ii) certain increased costs incurred after May 15, 1973 which could be allocated to various refined petroleum products. *See* 6 C.F.R. § 150,358 (1973), *recodified* as amended, 10 C.F.R. § 212.83 (1974). Among the increased costs that could be used to justify price increases were cost increases in the price of crude oil obtained from a refiner's affiliate ("interaffiliate landed crude oil costs").

The initial rule governing interaffiliate landed crude oil costs required refiners to compute these costs by use of "customary accounting procedures generally accepted and ... historically applied by the firm concerned." 38 F.R. 25688 (1973), *codified as* 6 C.F.R. § 150.356(b). A separate regulation permitted the Cost of Living Council[6] to "disallow" interaffiliate costs which it determined to be in excess of the "proper measurement of costs." 38 F.R. 25688 (1973), *codified as* 6 C.F.R. § 150.356(c).

It was not until October 1974 that a regulation was issued defining the phrase, "proper measurement of costs." This regulation applied retroactively and established a complex formula for determining whether a refiner's costs were "properly measured." *See* 39 F.R. 38365 (1974), *codified* as 10 C.F.R. § 212.84(e).

In April 1977, the Federal Energy Administration ("FEA")[7] issued a Notice of Proposed Disallowance to Gulf, alleging that Gulf had overstated its interaffiliate costs by over $70,000,000 during the period October 1973 to May 1975. It is this allegation of cost overstatement upon which the plaintiffs rely in bringing this action. The plaintiffs allege that these overstated costs were passed through to them on products that they purchased from Gulf, and that

they are therefore entitled to a treble damage recovery under § 210 of the ESA.[8]

Returning now to the first theory of conflict, the defendant argues that the formula for determining "proper measurement of costs" adopted in October 1974 was possibly invalid insofar as it was applied retroactively. *See Standard Oil Co. v. Doe*, 596 F.2d 1029 (TECA 1978). If this formula is indeed invalid, the defendant argues, the standard in effect prior to the formula's promulgation will be applied in determining any overcharges occurring before October 1974. Since the two different standards for determining proper costs result in differing cost disallowances for the various months in question, the defendant reasons that depending upon when a particular plaintiff purchased from Gulf it will have more or less of an incentive to argue that one standard as opposed to the other should be applied.

Turning to the second allegation of conflict, the defendant argues that a conflict exists in that the proposed class members will be competing with each other in an attempt to show that overstated costs were passed through on particular products that they purchased from the defendant rather than on products purchased by other members of the class. The defendant argues that this conflict is especially acute because the energy regulations in effect allowed a refiner a great deal of discretion in passing through costs on products such as heating oil, gasoline, and diesel fuel.

Although these two possible conflicts envisioned by the defendant are potentially troublesome, this Court remains unconvinced that the threat of conflict is serious enough to warrant denial of class certification at this time.

**6.** The Cost of Living Council was the agency initially charged with enforcing the price regulations.

**7.** The FEA was the predecessor of the Department of Energy.

**8.** On July 26, 1973, Gulf entered into a consent order with the DOE. Under the terms of the

order, Gulf agreed to pay $42,240,000 to the U.S., and the DOE agreed to establish a refund procedure for persons who may have been overcharged by Gulf. The consent order was entered into without any admission of liability on the part of Gulf. On May 7, 1980, this Court enjoined the DOE from implementing the consent order.

As to the first potential conflict, it is not clear at this point to what extent a legitimate challenge can be raised regarding the retroactive application of the regulation promulgated in October 1974. Further, it is premature to predict that different plaintiffs will have widely differing recoveries depending upon which standard is employed.

As to the second potential conflict, once again, it would be premature to attempt to judge the actual magnitude of the problem. The question of which products the alleged overcharges were passed through on may, in fact, turn out to be readily determinable, rendering this conflict insignificant.

Because of the speculative nature of these conflicts, as well as the fact that it is unclear at this point what relative importance these issues will have in the context of the entire litigation, this Court will not deny class certification on these grounds at this time. As was noted in *Robertson v. N.B.A.*, 389 F.Supp. 867, 899 (S.D.N.Y.1975): "Class action determination will not be denied ... in the absence of a showing that the alleged potential conflicts are real possibilities and not mere imaginative speculation." *See also Green v. Wolf Corp.*, 406 F.2d 291, 299 (2d Cir. 1968); *Turnoff Drug Distributors, Inc. v. N. V. Nederlandsche Combinatie Voor Chemisch Industrie*, 51 F.R.D. 227 (E.D.Pa.1970) (class certified despite potential conflict in the development of facts that would afford certain plaintiffs greater recovery); 1 H. Newberg, *Class Actions* § 1120(f) at p. 203 (1977) ("The conflict that will prevent a plaintiff from meeting the 23(a)(4) prerequisite must be fundamental"). Should it become apparent at a later stage of the proceeding that these conflicts are indeed genuine and substantial, this Court could take whatever steps are necessary, including division into subclasses, amendment or striking of the class, to ensure that all plaintiffs' rights are adequately protected. *See* Fed.R.Civ.P. 23(c)(3) & (d); *General Motors Corp. v. City of New York*, 501 F.2d 639, 647 (2d Cir. 1974); *Robertson v. NBA*, 389 F.Supp. 867, 899–900 (S.D.N.Y.1975).

For the foregoing reasons, the proposed class is certified pursuant to Fed.R.Civ.P. 23(c). As there appears to be some concern over the exact language and dates to be utilized in describing the class, the parties are granted 60 days to submit a joint proposed order specifying the exact scope of the class. In the absence of agreement, the parties shall submit separate proposed orders within this time. The parties are further directed within this 60 day period to submit a proposed order indicating how notice shall be provided to all class members pursuant to Fed.R.Civ.P. 23(c)(2). The plaintiffs shall bear the cost of identifying class members and providing such notice. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358–59, 98 S.Ct. 2380, 2393, 57 L.Ed.2d 253 (1978); *Oscar Gruss & Sons v. Geon Industries, Inc.*, 89 F.R.D. 32 (S.D.N.Y.1980).

SO ORDERED.