Frank X. SCHIRTZINGER, t/a Charlestown West 76 Auto/Truck Stop, Inc., Hurricane, West Virginia, on behalf of himself and others similarly situated, Plaintiff-Appellant,

v.

John T. DUNLOP et al., Defendants-Appellees.

No. DC–15.

Temporary Emergency Court of Appeals.

Dec. 10, 1973.

Mac S. Dunaway, Gall, Lane & Powell, Washington, D. C. (William H. Willcox and Bernard J. Casey, Washington, D. C., on the brief), for plaintiff-appellant.

William C. White, Atty., U. S. Dept. of Justice (Irving Jaffe, Acting Asst.

Atty. Gen., William E. Nelson, and Allen W. Hausman, Attys., Dept. of Justice, on the brief), for defendants-appellees.

Before TAMM, Chief Judge, and VAN OOSTERHOUT and HASTINGS, Judges.

PER CURIAM.

This is a class action challenging the legality of Subpart L of the Cost of Living Council (CLC) Phase IV regulations as applied to a class of approximately 2,500 independent truck stop operators who sell No. 2–D diesel fuel. The single named plaintiff, Frank X. Schirtzinger, operates such a truck stop in Hurricane, West Virginia. In essence, plaintiff complains that he and his class cannot withstand the absorption of product and non-product cost increases required by Subpart L, and that many members of the class will be forced out of business if the regulations are permitted to stand. Plaintiff particularly objects to his inability under the regulations to increase the retail price of diesel fuel to cover product cost increases occurring after August 1, 1973, while his suppliers (refiners and wholesalers) allegedly are free to pass through their own product cost increases in the form of higher wholesale prices.

The complaint was filed in the district court on August 27, 1973, and a hearing was scheduled for August 29 on plaintiff's motion for a temporary restraining order and a preliminary injunction. At that hearing, the district court on its own motion decided to certify the entire action in both this case and National Petroleum Refiners Association v. Dunlop, 486 F.2d 1388 (Em.App.1973), to this court for consideration of constitutional questions, pursuant to § 211(c) of the Economic Stabilization Act of 1970, as amended.[1] Unlike *National Petroleum,* the plaintiff here does not contest the propriety of the certification inasmuch as constitutional arguments figure prominently in his attack on the regulations.

Subsequent to oral argument of this case on September 17, the CLC has on three separate occasions significantly amended the regulations here involved, as follows:

### SEPTEMBER 28, 1973 AMENDMENTS

On September 28, the Council replaced the ceiling price formula contained in the original regulations with a wholly different method of computation.[2] New § 150.355(d) defined ceiling price as the sum of (1) the weighted average price at which the product was sold by the retailer on May 15, 1973; and (2) product cost increases occurring between May 15 and September 27, 1973. 38 Fed.Reg. 27290 (Oct. 2, 1973). The new formula in effect extended the date for full product cost recovery for diesel fuel retailers from August 1 to September 27. In addition, the effective date for determining permissible markup over cost was moved forward from January 10, 1973, to May 15, 1973, which eliminated a prior distinction in this regard between independent retailers and refiner-retailers. In issuing the new regulations, the Council stated that it was implementing a "commitment to make upward adjustments in ceiling prices charged by retailers of gasoline, No. 2–D diesel fuel and No. 2 heating oil to re-

1. " § 211 Judicial review

    \*    \*    \*    \*    \*

    (c) In any action commenced under this title in any district court of the United States in which the court determines that a substantial constitutional issue exists, the court shall certify such issue to the Temporary Emergency Court of Appeals. Upon such certification, the Temporary Emergency Court of Appeals shall determine the appropriate manner of disposition which may include a determination that the entire action be sent to it for consideration or it may, on the issues certified, give binding instructions and remand the action to the certifying court for further disposition." 12 U.S.C. § 1904 (Supp. II 1972).

2. The original Subpart L, issued August 19, 1973, is found at 38 Fed.Reg. 22536 (Aug. 22, 1973).

flect increased costs of imports and domestic crude petroleum."

## OCTOBER 15, 1973 AMENDMENTS

On October 15, the Council further amended the regulations to permit retailers to recover product cost increases occurring between September 27 and October 14. 38 Fed.Reg. 28836 (Oct. 17, 1973). In addition, prices charged by refiners and resellers were frozen at their October 14 levels; thus, retailers such as plaintiff would experience no product cost increases during the freeze period. The October 15 freeze was to remain in effect until October 31. At the same time the freeze was announced, the Council issued notice of proposed regulations to take effect at the expiration of the freeze, and invited comment. 38 Fed.Reg. 28845 (Oct. 17, 1973).

## NOVEMBER 1, 1973 AMENDMENTS

Upon careful consideration of comments received and further self study, the Council on November 1 adopted its proposed amendments to the regulations, with some modification, the same to become effective on that date. 38 Fed. Reg. 30267 (Nov. 2, 1973). The ceiling price rule now governing plaintiff and his class is found in § 150.359(c) of the regulations. In pertinent part, this section provides:

(c) *Price rule.*—(1) A seller may not charge a price for any item subject to this section which exceeds the weighted average price at which the item was lawfully priced by the seller in transactions with the class of purchaser concerned on May 15, 1973, plus an amount which reflects on a dollar-for-dollar basis, increased costs of the item.

(2) Notwithstanding subparagraph (1) of this paragraph, with respect to special products,[3] a seller may not increase its May 15, 1973 selling prices to each class of purchaser more than

once in any calendar month to reflect increased costs, but may implement the increase on any day during that month.

The above rule applies to wholesalers ("resellers") as well as retailers, and new § 150.355(d) applies a similar "one increase per month" rule to refiners. Thus, all sellers of No. 2–D diesel fuel, plaintiff and his class included, are now permitted to pass through increased product costs on a once-monthly basis.

In its October 15 notice the Council summarized its proposed new rules as follows:

\* \* \* These new rules are designed to establish an orderly, more simplified system by which sellers of the special petroleum products determine maximum price levels and pass through costs from one sales level to another. This new system insures that no discrimination will exist among petroleum marketers in the method of establishing prices for petroleum products. The proposed rules would in no manner alter the general principle that all increased costs of imports and domestic crude petroleum may be passed through at every level of distribution in order to encourage a maximum expansion of supplies of petroleum products.

In light of the foregoing three amendments of the regulations, and the district court having certified the entire action to this court, we shall exercise our discretion to finally determine this proceeding pursuant to § 211(c) of the Act, *supra* note 1. *Cf.* National Petroleum Refiners Association v. Dunlop, *supra.*

■ It seems clear to us that the subsequent amendments of September 28, October 15 and November 1, 1973, have mooted the material issues raised by the complaint.

■ In memoranda filed subsequent to oral argument, the parties now agree

3. "Special products" are defined in § 150.352 to mean gasoline, No. 2 heating oil and No. 2–D diesel fuel.

that the issue of product cost pass through is, in light of these amendments, now moot. Plaintiff still contends, however, that the regulations unlawfully discriminate against truck stop operators by failing to permit automatic pass through of non-product cost increases allocable to the sale of diesel fuel.

We have considered the arguments raised by plaintiff's brief and supplementary memorandum and conclude that they are without merit. Under the new regulations, the single remaining pricing feature within the petroleum industry which plaintiff regards as discriminatory is the different manner in which refiners, on the one hand, and wholesalers and retailers, on the other, are treated with respect to non-product cost increases. Refiners may pass through such increases on a dollar-for-dollar basis, provided they prenotify the Cost of Living Council and the Council does not act to set aside the increase. See §§ 150.355(d), 150.154, 150.155. Of course, once such increases are passed through by refiners, they become product costs to wholesalers and retailers and may be automatically passed through to consumers. Wholesalers and retailers may pass through their own non-product cost increases only if they apply for and are granted an exception, based on "serious hardship or gross inequity," pursuant to § 155.41.

This remaining "discrimination," such as it is, does not constitute a denial of due process of law or a violation of § 211(d)(1) of the Economic Stabilization Act.[4] We find no grounds for holding that the CLC has exceeded its authority or has acted in a manner that was arbitrary or capricious in adopting the regulations here challenged. See Western States Meat Packers Association, Inc. v. Dunlop, 482 F.2d 1401 (Em.App.1973); Pacific Coast Meat Jobbers Association, Inc. v. Cost of Living Council, 481 F.2d 1388 (Em.App.1973). Any individual hardships or inequities caused by locally severe increases in allocable non-product costs may be appealed first to the Council pursuant to § 155.41, and then, if necessary, to the courts. See Anderson v. Dunlop, 485 F.2d 666 (Em.App.1973).

It is accordingly ordered that this action be and the same is now dismissed.

Dismissed.

---

4. "(d)(1) * * * no regulation of any agency exercising authority under this title shall be enjoined or set aside, in whole or in part, unless a final judgment determines that the issuance of such regulation was in excess of the agency's authority, was arbitrary or capricious, or was otherwise unlawful under the criteria set forth in section 706(2) of title 5, United States Code * * *."