QUINCY OIL, INC., Plaintiff-Appellee,

v.

FEDERAL ENERGY ADMINISTRA-TION, Defendant, Taunton Municipal Lighting Plant, Taunton, Mass., Intervenor-Appellant.

GULF OIL CORPORATION,
Plaintiff-Appellant,

v.

The DEPARTMENT OF ENERGY, James R. Schlesinger, Secretary, Department of Energy, Bernard Snyder, Acting Regional Representative, Department of Energy, Region III, Defendants-Appellees.

EXXON CORPORATION, Mobil Oil Corporation, General Crude Corporation, General Crude Oil Company, Coastal States Gas Corporation, Coastal States Marketing, Inc., Union Petroleum Corporation, Shell Oil Company, Plaintiffs-Appellees,

v.

DEPARTMENT OF ENERGY et al.,
Defendants-Appellants.

Nos. 1–5, 3–21 and 5–43.

Temporary Emergency Court of Appeals.

Argued Jan. 29, 1980.

Decided April 9, 1980.

Larry P. Ellsworth, Regulatory Litigation Div., Dept. of Energy, Washington, D. C., with whom David A. Engels and Mark Kreitman, Washington, D. C., were on brief, for defendant-appellant Dept. of Energy.

Barbara Gordon, Dept. of Justice, Washington, D. C., was on brief, for defendant-appellant Department of Justice.

Bonnie S. Blair, Spiegel & McDiarmid, Washington, D. C., with whom Robert C. McDiarmid and Cynthia Schneider Bogorad, Washington, D. C., were on brief, for intervenor-appellant Taunton Municipal Lighting Plant.

Donald B. Craven, Miller & Chevalier, Washington, D. C., with whom Craig D. Miller and James B. Altman, Washington, D. C., and John E. Bailey and Catherine C. McCulley, Gulf Oil Corporation, Houston, Tex., were on brief, for plaintiff-appellant Gulf Oil Corporation.

David S. Mortensen, Hale & Dorr, Boston, Mass., with whom Timothy H. Gailey and Barbara L. Moore, Boston, Mass., were on brief, for plaintiff-appellee Quincy Oil, Inc.

David J. Beck, Fulbright & Jaworski, Houston, Tex., with whom David L. Tolin, Sr., Houston, Tex., was on brief for plaintiffs-appellees Exxon Corporation, Coastal States Gas Corporation, Coastal States Marketing, Inc. and Union Petroleum Corporation.

Andrew J. Kilcarr and Thomas R. Trowbridge III, Donovan, Leisure, Newton & Irvine, New York City, were on brief, for plaintiff-appellee Mobil Oil Corporation.

James V. Carroll and Edith H. Jones, Andrews, Kurth, Campbell & Jones, Houston, Tex., were on brief, for plaintiffs-appellees General Crude Corporation and General Crude Oil Company.

William Simon, William E. Wickens and Edward P. Henneberry, Howrey & Simon, Washington, D. C. were on brief, for plaintiff-appellee Shell Oil Company.

Before METZNER, PECK and LACEY, Judges.

METZNER, Judge.

These three cases have been consolidated on appeal because they raise similar questions concerning this court's limited statutory jurisdiction and the doctrine of mootness.

In *Quincy Oil, Inc. v. FEA*, 468 F.Supp. 383 (D.Mass.1979), Quincy Oil, Inc. (Quincy) sought vacatur of a remedial order granted by the Federal Energy Administration (FEA) directing Quincy to repay purported overcharges to its customer Taunton Municipal Lighting Plant (Taunton), and also sought a declaratory judgment that the amount charged Taunton was in compliance with the Mandatory Price Regulations, 10 C.F.R. § 212.93. The Massachusetts district court, on the application of the Department of Energy (DOE),* and consented to by Quincy, dismissed the appeal as moot. DOE had withdrawn the remedial order following the adoption of Ruling 1979–1, which changed the interpretation of "transaction" in Ruling 1977–5 upon which the remedial order was based. Taunton, which in 1977 had been given leave to intervene below, has taken this appeal from the order of dismissal.

In *Gulf Oil Corporation v. DOE*, Gulf Oil Corporation (Gulf) brought an action to have both a remedial order directing repayment of overcharges and Ruling 1977–5, on which the remedial order was premised, declared null and void, and to enjoin enforcement of the remedial order or the ruling against Gulf. Gulf appeals to this court from the order of the Pennsylvania district court dismissing the case as moot, after DOE filed an admission of error and withdrew the subject remedial order following the promulgation of Ruling 1979–1.

In *Exxon Corporation, et al. v. DOE*, DOE's motion to dismiss for mootness under circumstances similar to the other two cases was denied, and the Texas district court granted summary judgment against DOE declaring Ruling 1977–5 procedurally and substantively invalid, and enjoining DOE from enforcing the interpretation of the term "transaction" embodied in Ruling 1977–5. DOE appeals the lower court's denial of its motion to dismiss.

These actions share a common background. On March 21, 1977, DOE issued Ruling 1977–5, 42 Fed.Reg. 15302, which declared that for variable price contracts a "transaction," as defined in the Mandatory Price Regulations, 10 C.F.R. § 212.31, occurs at the time a price is fixed with respect to a particular delivery of a covered product, rather than at the time the contract is entered into. The time at which a transaction occurs determines the transaction price to be used as the "base price" in calculating current maximum allowable prices. Relying on this ruling, DOE issued remedial orders against Quincy, Gulf and Exxon (hereinafter collectively referred to as "the Oil Companies") directing them to repay amounts charged to customers in excess of the maximum allowable prices. The Oil Companies then brought these actions for injunctive and declaratory relief attacking the validity of Ruling 1977–5 and the remedial orders promulgated pursuant to it.

On April 24, 1979, DOE issued Ruling 1979–1, 44 Fed.Reg. 24046, which declared that the interpretation of "transaction" in Ruling 1977–5, insofar as it pertained to variable price contracts, was erroneous. It adopted the interpretation urged by the Oil Companies below, to wit, that a "transaction" occurs at the time a variable price contract is entered into. DOE then withdrew the remedial orders and moved to dismiss the cases for mootness.

■ The threshold question of this court's power to review the lower courts' findings of mootness under our limited statutory grant of jurisdiction must first be answered. We find that we do have jurisdiction to entertain the instant appeals.

Section 211(b)(2) of the Economic Stabilization Act of 1970 (ESA), 12 U.S.C.A. § 1904 note, incorporated by reference in the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C.A. § 754(a)(1), vests this court with "exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies *arising under* this title or under regulations or orders issued thereunder." (Emphasis sup-

---

* DOE is the successor to the Federal Energy Administration (FEA) by virtue of Section 301(a) of the DOE Organization Act, Pub. L. 95–91, Title III, § 301(a), Aug. 4, 1977, 42 U.S.C. § 7151(a); and Executive Order No. 12038, Feb. 3, 1978, 43 Fed.Reg. 4957.

plied.) The Oil Companies argue that mootness is an issue of general common law or constitutional law, and that therefore the issues raised in these appeals do not "arise under" the ESA or the EPAA.

This jurisdictional attack is bottomed on our recent decision in *Texaco v. DOE*, 616 F.2d 1193 (TECA 1979), and on the Second Circuit's decision in *Coastal States Marketing, Inc. v. New England Petroleum Corporation*, 604 F.2d 179 (2d Cir. 1979).

In the *Coastal States* case, the Second Circuit declined to hear an appeal from the lower court's denial of the defendant's motion to vacate judgment in which the lower court had adjudicated and rejected a defense of illegality based on alleged violations of the Mandatory Price Controls. The Second Circuit held that, unlike traditional "arising under" jurisdiction, TECA has exclusive jurisdiction under Section 211(b)(2) to hear appeals raising solely ESA–EPAA issues, even when those issues have been raised in a defense to a non-ESA–EPAA cause of action. The court in *Coastal States* concluded broadly that " 'cases and controversies arising under' the ESA as used in § 211(b)(2), means adjudications by a district court of an 'ESA issue.' " *Id.* at 187.

That conclusion was adopted by this court in *Texaco v. DOE, supra.* The complaint in *Texaco* raised the EPAA issue of entitlement to adjustment relief under DOE's oil entitlements program. However, the sole issue urged on appeal to this court was the propriety of the Federal Energy Regulatory Commission's refusal to review the grant of interim relief, a question of statutory interpretation of Section 504(b)(1) of the Department of Energy Organization Act, 42 U.S.C. § 7194(b)(1). Recognizing that that Act did not expressly provide for appellate review by this court, we declined jurisdiction to hear the appeal, even though the underlying cause of action involved an EPAA issue.

Our decision in that case was based on the fact that resolution of the issue on appeal

"involves an interpretation of the DOE Act itself and *not an application of any*

*other law.* . . . Section 502(b) of the Act, 42 U.S.C. § 7192(b), thus controls judicial review. It provides that the district courts shall have exclusive original jurisdiction of all cases arising exclusively under the Act without special provision for appeal to TECA. That 'omission' is decisive on the question of this court's jurisdiction." 616 F.2d at 1196. (Emphasis added.)

■ Mootness, however, is not an "issue" that arises independently of the substantive claim or cause of action being challenged as moot. Rather, the doctrine of mootness questions the continuing vitality of a substantive claim or cause of action under adjudication and has no life apart from that substantive claim.

Furthermore, to apply the term "issue" as it is used in *Texaco* and *Coastal States* to mootness—and by logical extension to other subsidiary, procedural and threshold questions such as standing, ripeness and venue—would remove those questions from this court's jurisdiction and thus prevent it from performing the normal and necessary functions of any appellate court. We have consistently exercised jurisdiction over such matters. *National Helium Corp. v. FEA*, 569 F.2d 1137 (TECA 1977) (procedure); *Mosley v. Nationwide Purchasing Inc.*, 485 F.2d 418 (TECA 1973) (venue); *Standard Oil Co. v. DOE*, 596 F.2d 1029 (TECA 1978) (ripeness); *City of New York v. New York Telephone Company*, 468 F.2d 1401 (TECA 1972) (exhaustion of administrative remedies). Such an extension would go beyond the subject matter limitations of Section 211(b)(2) and would impinge on the "powers of a circuit court of appeals" conferred on this court by Section 211(b)(1).

It is essential to the effective operation of the Mandatory Price Controls scheme that the EPAA issues raised in these three consolidated appeals concerning the transaction definition in the regulations be adjudicated consistently and uniformly. This, in turn, requires that the question of mootness in all three cases be determined uniformly and not be left to possibly contradictory determinations by different courts of appeals.

Finally, a finding that mootness is a non-ESA-EPAA issue would require reversal of those cases in which this court determined that events subsequent to judgment below mooted the appeal. *See, e. g., Gulf Oil Corp. v. Simon,* 502 F.2d 1154 (TECA 1974); *Schirtzinger v. Dunlop,* 489 F.2d 1307 (TECA 1973); *Miller v. Dunlop,* 488 F.2d 608 (TECA 1973). We find no basis for such a result. The cited cases were correctly decided.

We therefore hold that we have jurisdiction to hear these appeals.

We now turn to the merits of each case.

In the *Quincy* case, Taunton claims that DOE abused its discretion in withdrawing the remedial order issued against Quincy, and that the district court erred in dismissing the case for mootness on the basis of that withdrawal. We affirm the dismissal.

■ Taunton first disputes DOE's power to withdraw the remedial order after the district court had taken jurisdiction of the case. Judge Caffrey addressed that issue below and correctly held that DOE had jurisdiction to withdraw the order. *Relf v. Weinberger,* 565 F.2d 722 (D.C. Cir. 1977); *Taylor v. United States,* 528 F.2d 60 (7th Cir. 1976). *See also, United Gas Company v. Callery Properties,* 382 U.S. 223, 229, 86 S.Ct. 360, 364, 15 L.Ed.2d 284 (1965).

■ Taunton links the remaining issue of whether the withdrawal of the remedial order was arbitrary, capricious, or an abuse of discretion to consideration of the procedural and substantive validity of Ruling 1979–1. Judge Caffrey held that Taunton had not raised the validity of Ruling 1979–1 in *Quincy,* and therefore he declined to rule on the propriety of the withdrawal of the remedial order. Instead, he observed that Taunton had challenged Ruling 1979–1 directly in its own action against DOE, *Taunton v. DOE,* then pending in the district court, and could pursue its claims therein.

While we are of the opinion that Taunton did raise these issues in the *Quincy* case and did so at the first possible opportunity in its memorandum in opposition to DOE's motion to dismiss, we recognize the practical wisdom of Judge Caffrey's dismissal on grounds of mootness.

It was unnecessary to interject Taunton's new attack on Ruling 1979–1 in what had been Quincy's dispute with DOE concerning the remedial order and the validity of Ruling 1977–5. Quincy consented to the dismissal and thereby indicated that it did not question the validity of Ruling 1979–1 or the good faith of DOE in promulgating the ruling. Given Taunton's active prosecution of those new claims elsewhere, there was no need to alter the underlying nature of the controversy in the *Quincy* case. The dismissal in *Quincy* allowed the principal parties to resolve the controversy which engendered that action without precluding Taunton from obtaining a decision on its claims.

Once those rights are protected, the goals of judicial economy and efficiency prohibit parallel adjudications of the same claims between the same parties in separate actions.

In these circumstances, there is no reason to deny the original parties in this case the repose they seek by dismissal of this case. Quincy and DOE no longer have adverse legal interests in a definite and concrete controversy touching on their legal relations. *DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). The case is moot. The judgment below is affirmed.

In the *Gulf* case, No. 77–3113, Gulf, unlike Quincy, opposed DOE's motion to dismiss for mootness and now appeals the district court's grant of that motion. Unlike Taunton, Gulf does not directly attack the validity of Ruling 1979–1, but urges that sufficient uncertainty remains about the firmness and finality of DOE's newly adopted position to defeat application of the mootness doctrine.

Gulf's position invokes the principles established in *United States v. W. T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), and *County of Los Angeles v. Davis,* 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). In those cases the Court declared that a defendant's voluntary cessation of

illegal conduct does not by itself moot a case. In addition, the defendant has the "heavy burden" of demonstrating that "there is no reasonable expectation that the wrong will be repeated." *United States v. W. T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 897. The Court in the *Davis* case added the third element of a showing by the defendant that interim rulings or events have completely and irrevocably eradicated the effects of the alleged violations.

Gulf first argues that procedural deficiencies in the promulgation of Ruling 1979–1 render it vulnerable to attack by customers of Gulf, and that a controversy surrounding the meaning of "transaction" therefore persists. However, in oral argument on the motion to dismiss before Judge Lord, Gulf conceded that Ruling 1979–1 was not at issue in its case. It is therefore not before this court.

Gulf also asserts that DOE's history of flexibility in its interpretation of the term "transaction," as reflected by its adoption of Ruling 1977–5, its defense of that ruling on a variety of theories, and its about-face in Ruling 1979–1, preclude the finding of no reasonable expectation of recurrence, which is necessary to a determination of mootness. Since DOE is not bound by its interpretative rulings, Gulf claims that the agency can readopt its former interpretations after the "ploy" of promulgating Ruling 1979–1 has mooted the instant challenges to Ruling 1977–5. Gulf thus contends that only a judgment on the merits will protect it from the vicissitudes of administrative whim.

■ As the party appealing from a dismissal for mootness, Gulf has the burden of demonstrating that "there was no reasonable basis for the District Judge's decision." *United States v. W. T. Grant Co.*, 345 U.S. at 634, 73 S.Ct. at 898. It has failed to meet that burden on this appeal.

■ DOE's uncertainty about the meaning of the term "transaction" has undeniably generated much confusion within the industry. However, Gulf has failed to show that there exists "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W. T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 898. Gulf has offered no evidence of any present interest of DOE to return to its former policy. The fact that DOE has the power to change its policy and could abandon its present position poses a possibility of recurrence too speculative and remote to justify reversal of the lower court's determination. *Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975); *United States v. W. T. Grant Co., supra; County of Los Angeles v. Davis, supra.*

On the other hand, DOE has affirmed herein that it will "vigorously defend" its Ruling 1979–1 against attack. DOE brief, p. 22. It has represented that Ruling 1979–1 embodies what it believes to be the correct interpretation of the regulations.

On the record before us, we cannot find that DOE's "flexibility" on the question and its ultimate adoption of the Oil Companies' viewpoint represent a bad-faith stratagem to defeat judicial review rather than a well-intentioned, if belated, endeavor to correct the confusing situation it had created.

Finally, Gulf argues that only a judicial declaration sustaining its interpretation of the transaction definition can completely and irrevocably eliminate all of the effects of DOE's allegedly unlawful conduct, and the possibility of suit by customers of Gulf seeking to reinstate Ruling 1977–5.

The need for judicial declaration has been met by the decision in *Exxon*, which we will discuss presently.

As Gulf concedes in its brief (p. 20), judgment on the merits in its case will not bind its customers or prevent them from seeking a judicial reinterpretation of the regulations. Such a determination would have only a precedential effect that may discourage subsequent actions. Thus, it would add nothing more than cumulative force to the similar type of protection already afforded by the *Exxon* decision. Such incremental precedential effect does not justify entry of what would amount to an advisory opinion herein. Gulf has failed to show how yet another judgment on the merits would

serve the "public interest in having the legality of the practices settled." *United States v. W. T. Grant Co.*, 345 U.S. at 632, 73 S.Ct. at 897. We affirm the district court.**

█ In the *Exxon* case DOE appeals from the Texas district court's denial of its motion to dismiss for mootness and claims that the court erred in proceeding to judgment on the merits of the validity of Ruling 1977–5. We find that DOE lacks standing to take this appeal.

Section 211(e)(2) of the ESA authorizes "any party *aggrieved* by a declaration of a district court of the United States respecting the validity of any regulation or order issued under this title" to "file a notice of appeal therefrom in the Temporary Emergency Court of Appeals." (Emphasis added.) Exxon and the other appellees on this appeal argue that DOE has in no way been "aggrieved" by the lower court's grant of summary judgment for the plaintiffs, since the court merely affirmed the position adopted by DOE in Ruling 1979–1.

At the time that DOE moved to dismiss the action as moot because of the promulgation of Ruling 1979–1, the motion for summary judgment by Exxon to declare invalid the interpretation of "transaction" in Ruling 1977–5 was pending. Mootness was predicated on the position of DOE that it now agreed with Exxon. DOE was not aggrieved when the court put its imprimatur on DOE's position by granting summary judgment to Exxon rather than by granting DOE's motion to dismiss.

It also appears that such decision would, in fact, be of great use to DOE in its "vigorous" defense of Ruling 1979–1 in the *Taunton* case (see DOE's brief, p. 22) and elsewhere.

The only justification offered by DOE for taking the appeal "is that non-parties contending for other interpretations are unfairly burdened with the *stare decisis* effect of the Texas court's judgment on the merits

from which no appeal was possible." DOE brief, p. 22.

While such altruistic concern by DOE for its potential adversaries may be admirable, it does not rise to the personal stake in the outcome that is required to confer standing.

Since DOE cannot benefit from a change in the judgment, it has no appealable interest. *Webb v. Beverly Hills Federal Savings and Loan Assoc.*, 364 F.2d 146 (9th Cir. 1956). Unless a party's interests are adversely and demonstrably affected by the lower court's decision, no standing to prosecute an appeal exists. *Cobb v. Aytch*, 539 F.2d 297, 300 (3d Cir. 1976), *cert. denied sub nom. Engelfried v. Aytch*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977); *United States v. Adamant Co.*, 197 F.2d 1 (9th Cir.), *cert. denied sub nom. Bullen v. Scoville*, 344 U.S. 903, 73 S.Ct. 283, 97 L.Ed. 698 (1952). DOE, not adversely affected by the judgment below, and not standing to benefit in any demonstrable way from a change in the judgment, has no appealable interest in this case. That appeal is therefore dismissed.

Judgment shall be entered accordingly.

---

** If Gulf wishes further protection from customer suits it may seek to intervene in Taunton's pending customer suit against DOE and Quincy, in which Taunton raises the very issues discussed by Gulf.