762 F.2d 1009
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BEATRICE MILTON, PLAINTIFF-APPELLEE,
v.
RAYMOND DONOVAN, SECRETARY OF LABOR, ET AL., DEFENDANTS,
S. MARTIN TAYLOR, DIRECTOR, MICHIGAN EMPLOYMENT SECURITY
COMMISSION, DEFENDANT-APPELLANT.
 NO. 84-1228
 United States Court of Appeals, Sixth Circuit.
 4/26/85
 
 On Appeal From The United States District Court for the Western District of Michigan
 BEFORE: LIVELY and KEITH, Circuit Judges, and WEICK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This is an appeal from a ruling by the Honorable Noel P. Fox, Senior Judge for the United States District Court for the Western District of Michigan, remanding an administrative decision for the awarding of welfare benefits that had been improperly withheld from the appellee. We affirm the ruling of the district court.
 
 
 2
 Appellee, Beatrice Milton, received Aid to Families with Dependent Children (AFDC) for herself and her three minor children and was therefore required to participate in the Work Incentive (WIN) program. From June 1975 when Ms. Milton registered for WIN, she was employed as a secretary, earning approximately $4.50 per hour. This salary did not enable appellee to support her family, thus she continued to receive public assistance while employed. She eventually left her employment to get training that would allow her to obtain a job that would permit her to be self-sufficient. In August 1978 appellee enrolled at Grand Valley State College.
 
 
 3
 Milton planned to earn a college degree in correction and become a probation officer. She had been told that the job market for probation officers was excellent, especially for minority females, and expected to earn $13,000 to $14,000 per year. In the fall of 1978 appellee enrolled at Grand Valley State and obtained a Basic Educational Opportunity Grant to pay her educational expenses. She discussed her plans with the WIN officer, including the length of the program, and on September 7, 1978, an employability plan was drafted indicating one year of college training, with the ultimate goal of becoming a probation/parole officer. Appellee was told that there would be an evaluation of her progress in college and a subsequent determination as to whether she would be allowed to complete her second year.
 
 
 4
 This controversy arose when Ms. Milton was called in for a re-evaluation of her employability plan in September 1979. At that time appellee was doing well in her second year of college training. Ms. Milton had completed 18 credit hours of 30 hours she was expected to finish. Appellee expressed her desire to complete her second year and earn an Associate's Degree. Instead she was given two weeks to find full time employment and then assigned to the Job Seeking Skills Program (JSSP). A revised employability plan dated August 27, 1979 reflects this assignment.
 
 
 5
 Appellee was assigned to JSSP after an evaluation by program workers. Keith Anderson, a WIN worker, testified at a hearing before the Michigan Employment Security Commission (MESC) that 'Based on the options, and the alternatives open to us, we felt that the JSSP, since she [Ms. Milton] was not employed, was the WIN activity most appropriate to lead her to employment in a short amount of time.' Jt. App. at 80. However, Mr. Anderson declined to discuss what was involved in the program he felt most appropriate for the plaintiff because he was not qualified to do so. Jt. App. at 80, 83. Ms. Milton was told that 'what we would be doing in that class was learning how to fill out applications and how--learning how to go about applying for a job.' Since appellee left a job to participate more fully in the WIN program, it is safe to assume that, as she testified, appellee knew how to complete job applications. Jt. App. at 82. Mr. Anderson testified that, in drafting the 1979 employability plan, he made an analysis of job market opportunities, but that analysis was not included in the plan. Jt. App. 84-85. Assessment factors such as the employment and training assessment survey, reason for choice, present skill level, testing, and additional qualifications were left blank as is the goal of appellee's long range placement. Mr. Anderson eventually acknowledged that he knew of no other possible WIN activities except for other JSSP classes. Jt. App. at 86, 87.
 
 
 6
 Mary Shafer, the other WIN representative, stated that a training program, such as college, could only be allowed for one year. She understood that exceptions could be granted by applying to the regional HHS offices but felt that exceptions would only be obtained if the person was unemployable because of a handicap. Though not the only reason, physicial handicap was the only justification for which she had seen such exceptions granted. Jt. App. at 70-71, 78. Ms. Shafer testified that an exception to the one year limit had not been sought for the plaintiff, and in fact they had never requested an extension. Jt. App. at 79.
 
 
 7
 Since she did not obtain full time employment or attend the JSSP classes, Beatrice Milton was deregistered from the WIN program and consequently sanctioned with a reduction in her family's AFDC benefits. Ms. Milton filed a timely protest to the MESC referee. After holding the hearing, the MESC referee upheld the deregistration. Ms. Milton exhausted her administrative remedies by filing appeals to the MESC Board of Review and the National Review Panel (NRP). The NRP declined to accept an appeal and plaintiff then filed this action for judicial review.
 
 
 8
 The district court reversed the administrative hearing decision based upon a finding that the agency personnel had failed to exercise their discretion in choosing an appropriate WIN activity for the appellee and by failing to consider the possibility of a waiver of the one year limitation on education programs.
 
 
 9
 Pursuant to the district court decision, the Michigan Department of Social Services (DSS) paid appellee the full amount of benefits she claimed. The DSS has not filed an appeal to this Court. The federal defendants, Secretaries of Labor and Health and Human Service (HHS), originally filed an appeal from the district court decision but have since withdrawn their appeal. The sole remaining appellant is S. Martin Taylor, Director of the Michigan Employment Security Commission (MESC).
 
 
 10
 At the time of appellee's involvement, the WIN program in Michigan was run jointly by the DSS and the MESC. The decision to sanction a recipient was made jointly by DSS and MESC employees and resulted in a reduction of AFDC payments by DSS, the agency responsible for administering the AFDC program. It was the Department of Social Services, not MESC, which paid retroactive AFDC benefits to appellee as a result of the district court's decision. MESC has not paid and is not required by the decision below to pay out benefits or other damages. Also, MESC does not stand to recover any funds if the district court order is reversed. Any such recovery would go to DSS. Furthermore, Michigan has long since changed to a single agency WIN program, administered exclusively by DSS. MESC is no longer involved at all in the WIN program or similar successor programs.
 
 
 11
 'Ordinarily only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom.' Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 333 (1980). An actual controversy must exist at all stages of appellate review in order to avoid mootness. DeFunis v. Odegaard, 416 U.S. 312 (1974). When there is no longer a live case or controversy, this court is deprived of jurisdiction to entertain an appeal. United States v. Aquinas College Credit Union, 635 F.2d 887 (6th Cir. 1980). In Gonzales Torres v. Toledo, 586 F.2d 858 (1st Cir. 1978), the defendant was denied standing to appeal a judgment nominally entered against him because the judgment would actually be paid by his successor in office who had not appealed and the appellant thus lacked a sufficient stake in the controversy to maintain the appeal. See Maria Santiago v. Corporacion de Renovacion, 554 F.2d 1210 (1st Cir. 1977); Fuqua v. Bidwell, 281 F.2d 753 (6th Cir. 1960). See also Quincy Oil Inc. v. Federal Energy Administration, 620 F.2d 890, 896 (Temp. Em. Ct. of App. 1980).
 
 
 12
 The situation in the instant case is similar to that in Gonzales-Torres. In the present case, the interests of the appellant S. Martin Taylor and the Michigan Employment Security Commission are not adversely affected by the lower court's decision and they therefore have no standing to maintain this appeal. Neither Taylor personally nor the MESC have paid or are required to pay any money under the decision below, nor will they obtain any money if the decision below is reversed. If any party has a claim for restitution it would be the Michigan Department of Social Services, which paid the benefits required under the judgment. MESC has no continuing involvement in the WIN program so it will not be affected by any possible precedential effect on the decision below. Even if this were the case, a governmental agency's concern for the precedential effect of a decision is not sufficient to confer standing to appeal. See Quincy Oil Co. v. Federal Energy Administration, 620 F.2d 890. Appellant might feel he has an interest because the MESC may be required to pay part of plaintiff's attorney fees. However, the Supreme Court has held that a controversy only as to the payment of attorney fees or other costs of litigation does not preserve an otherwise moot case. Heitmuller v. Stokes, 256 U.S. 359, 631-362 (1921); Crowell v. Mader, 444 U.S. 505 (1980). Thus, the sole remaining appellant has no standing to appeal the district court decision.
 
 
 13
 Accordingly, the decision of the Honorable Noel P. Fox is hereby affirmed.