Joseph STERTZ and Louis De Nicola, Plaintiffs-Appellees,

v.

GULF OIL CORPORATION, Defendant-Appellee,

and

Charles W. Duncan, Jr., Secretary of the Department of Energy, Stakeholder-Appellant.

Jeffrey A. WEINER, Plaintiff-Appellee,

v.

GULF OIL CORPORATION, Defendant-Appellee,

and

Charles W. Duncan, Jr., Stakeholder-Appellant.

Nos. 2-27, 2-28.

Temporary Emergency Court of Appeals.

Argued Nov. 14, 1980.

Decided March 25, 1981.

Ben Wiles, Asst. U. S. Atty., Dept. of Justice, Brooklyn, N. Y., with whom Edward R. Korman, U. S. Atty., E. D. N. Y. and Harvey M. Stone, Asst. U. S. Atty., Brooklyn, N. Y., David A. Engels, Dept. of Energy, Washington, D. C., and Paul M. Geier and Dean S. Cooper, Sp. Counsel, Dept. of Energy, Washington, D. C., were on the brief, for appellant.

Douglas P. Null, Null & Null, P. C., Garden City, N. Y., with whom Miriam P. Null, Garden City, N. Y., was on the brief, for appellees (Stertz and De Nicola).

John W. Castles, 3d, Michael J. Murphy and Banks Brown, Lord, Day & Lord, New York City, were on the brief, for appellee (Gulf Oil Corp.).

Before GIGNOUX, METZNER and LACEY, Judges.

GIGNOUX, Judge.

The Secretary of the Department of Energy (DOE) appeals from that part of an order of the United States District Court for the Eastern District of New York which

denied DOE's motion for judgment on the pleadings in an action brought by plaintiffs Joseph Stertz and Louis DeNicola against Gulf Oil Corporation (Gulf) and DOE under Section 210 of the Economic Stabilization Act of 1970, as amended, 12 U.S.C. § 1904 note, incorporated into the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751 *et seq.*, by Section 754 of that Act.[1] Because this Court lacks jurisdiction to entertain this appeal, the appeal must be dismissed.

I

On July 26, 1978, DOE and Gulf entered into a consent order to settle allegations by DOE that Gulf, in violation of 10 C.F.R. § 212.84, had overstated its costs for imported crude oil by approximately $79 million (later reduced to $73.9 million) in the period October 1973 through May 1975. Without conceding such violations, Gulf agreed to pay $42.24 million to the Government in settlement of DOE's enforcement action, and DOE agreed to assume administrative responsibility for establishing and implementing a program to refund the $42.24 million to those persons who may have been overcharged by Gulf.

On August 18, 1978, fifteen days after notice of the consent order appeared in the Federal Register, plaintiffs Stertz and DeNicola, as representatives of purchasers of Gulf products who were overcharged by Gulf as the result of the alleged violations settled by the consent order, filed in the Eastern District of New York this class action against Gulf for overcharges pursuant to Section 210 of the Economic Stabilization Act.[2] Plaintiffs also sued DOE,

alleging that under the consent order the Secretary acts as "stakeholder" of the $42.24 million consent order fund, "which is properly the property of plaintiffs in partial payment of their cause of action." They request that the Secretary be required "to pay over the Registry of this Court the fund he now holds on behalf of plaintiffs."

■ The development of this action in the district court is intertwined with DOE's efforts to devise a refund procedure under the July 26, 1978 consent order. Between August 1978 and August 1979, DOE proposed three different refund procedures for distribution of the $42.24 million, to each of which Gulf has registered strenuous objection. The first proposed plan was promulgated by DOE's Office of Hearings and Appeals (OHA) on August 28, 1978. Gulf objected to the proposed refund procedure, because it allegedly would subject Gulf to the risk of "double liability" by permitting indirect purchasers to be among those who would have first claim to the $42.24 million. Gulf contended that the fund was intended to satisfy the claims of direct purchasers, those purchasers who might have a judicial remedy against Gulf under Section 210, before payment could be made to indirect purchasers, those purchasers who could not sue Gulf.[3] On March 13, 1979, DOE issued a second proposed refund procedure, which, in Gulf's view, failed to cure the deficiencies in the first proposal. After extended negotiations between DOE and Gulf, DOE unveiled its final proposed refund procedure on July 13, 1979. The proposal was again unsatisfactory to Gulf, since it allegedly still could subject Gulf to double liability by

1. Section 210 of the Economic Stabilization Act of 1970 provides:

  (a) Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages.

2. In May 1979 plaintiff Jeffrey A. Weiner filed a similar class action in the Eastern District of Pennsylvania. That action was transferred to the Eastern District of New York in August 1979 and has been consolidated with the *Stertz* action. DOE has moved for its dismissal from the *Weiner* action on the same grounds as asserted in the *Stertz* action. That motion has not been determined and is not presently before this Court.

3. Only direct purchasers have standing to sue under Section 210. *Arnson v. General Motors Corp.*, 377 F.Supp. 209, 212 (N.D.Ohio 1974).

permitting a substantial portion of the $42.24 million to be paid to persons who were not direct purchasers and could not sue Gulf, thereby depleting the amount available to pay the claims of direct purchasers who recovered judgments under Section 210.

In the meantime, several months after the first proposed refund plan was promulgated, on December 8, 1978, DOE filed a motion to dismiss the pending district court action against it, or alternatively to stay the action pending completion of distribution of the consent order fund. On March 5, 1979, Gulf filed a motion for leave to amend its answer to assert cross-claims against DOE challenging DOE's implementation of the consent order, and a motion for a preliminary injunction enjoining DOE from distributing funds pursuant to its proposed refund procedure until the issues raised by Gulf's cross-claims could be resolved.[4] On March 23, 1979, DOE responded by filing pursuant to Fed.R.Civ.P. 12(c) a motion for judgment on the pleadings dismissing the action as against DOE for failure to state a claim upon which relief can be granted.

On March 6, 1980, the district court issued a memorandum and order which denied DOE's motions for dismissal or a stay, and for judgment on the pleadings, and which granted Gulf's motions for leave to amend its answer and for a preliminary injunction. 528 F.Supp. 735. The order implementing this decision was entered May 7, 1980, and on June 6, 1980, DOE filed a notice of appeal which was expressly limited to that part of the district court's order which denied DOE's motion for judgment on the pleadings seeking dismissal of the complaint as to it. DOE has not appealed those parts of the May 7, 1980 order which

granted Gulf leave to amend its answer to assert cross-claims against DOE and which preliminarily enjoined DOE from implementing the July 26, 1978 consent order.[5]

## II

Section 211(b)(1) of the Economic Stabilization Act vests this Court with "the powers of a circuit court of appeals" with respect to the jurisdiction conferred on it by the Act. 12 U.S.C. § 1904 note. Under 28 U.S.C. § 1291, the appellate jurisdiction of courts of appeals is limited to "final decisions of the district courts . . . except where a direct review may be had in the Supreme Court." Ordinarily, therefore, this Court is without jurisdiction to hear an appeal from an interlocutory order of a district court unless the district court has certified the order for appeal pursuant to 28 U.S.C. § 1292(b). *See Marine Petroleum Co. v. Champlin Petroleum Co.,* 29 Fed.R. Serv.2d 522, 529 (Em.App.1980). It is elementary that the denial of a motion for judgment on the pleadings seeking dismissal of an action is an interlocutory order; it is not a final judgment and generally is not immediately appealable. *Catlin v. United States,* 324 U.S. 229, 233, 236, 65 S.Ct. 631, 633, 635, 89 L.Ed. 911 (1945); *Paplisky v. Berndt,* 503 F.2d 554, 555 (2d Cir.), *cert. denied,* 419 U.S. 1048, 95 S.Ct. 624, 42 L.Ed.2d 643 (1974); 9 Moore's Federal Practice ¶ 110.08[1] at 113 (2d ed. 1980); 5 Wright & Miller, Federal Practice and Procedure: Civil § 1372 (1969).

DOE argues that this appeal falls within the collateral order exception to the final judgment rule enunciated in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), as applied by this Court in *Marine Petroleum Co. v. Champlin Petroleum Co., supra.* In

---

4. On March 5, 1979, the district court issued a temporary restraining order restraining DOE from implementing the consent decree until Gulf's motions could be heard.

5. Under Section 211 of the Economic Stabilization Act, orders granting or denying preliminary injunctions are not appealable as of right, but only upon certification pursuant to 28 U.S.C. § 1292(b). *Exxon Corp. v. Federal En-*

*ergy Administration,* 516 F.2d 1397 (Em.App. 1975). Subsequent to the filing of the present appeal, DOE unsuccessfully sought a Section 1292(b) certification for appeal of that part of the district court's order which granted Gulf's motion for a preliminary injunction. The district court denied the request for certification on September 4, 1980.

*Cohen,* the Supreme Court recognized a "narrow exception" to the final judgment rule, *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981), and held that an appeal may be taken from a district court order that is not a final judgment when the order constitutes a final determination of a claim of right; the claim of right is "separable from, and collateral to," the merits of the main action, and "too important to be denied review"; and the claimed right is "too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen, supra* at 546, 69 S.Ct. at 1225. More recently, the Court has defined this "small class," *id.,* of appealable collateral orders in these terms: "'[T]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.'" *Firestone Tire & Rubber Co. v. Risjord, supra* (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)).

*Marine Petroleum* involved an action brought by Marine Petroleum Co. under Section 210 of the Economic Stabilization Act for alleged overcharges in the sale of gasoline by Champlin Petroleum Co. Plaintiff joined DOE as a defendant, but asserted no claim for relief against DOE. DOE filed a motion for judgment on the pleadings seeking its dismissal from the action on the ground that no claim for relief had been asserted against it and that it had been joined as a defendant solely for discovery purposes. This court applied the collateral order doctrine to sustain its jurisdiction of DOE's appeal from an order of the district court denying DOE's motion for judgment on the pleadings because the only claim of

right asserted by DOE—the claimed right to be free of the burden of discovery— would be effectively unreviewable on appeal from the final judgment on the merits. *Marine Petroleum Co. v. Champlin Petroleum Co., supra* at 532. Emphasizing that no claim had been asserted by or against DOE in the private action, and that an appeal by DOE from a final judgment "could not provide a remedy for the claimed wrongful imposition of the heavy burdens of response and extensive discovery in a plenary role as an adversary party," *id.,* the court concluded:

> The degree of independence of the claimed right of DOE in the private action by Marine against Champlin is so obvious and clear that appellate consideration should not be deferred until the whole case is adjudicated. To defer appellate consideration now is likely to make it impossible legally and practically to provide any ultimate relief to DOE if DOE proves correct in its claim of right. So, the order appealed from is effectively unreviewable after the private action is adjudicated.

*Id.* at 533.

Such is not the case here. In the instant case, plaintiffs have alleged that the $42.24 million consent order fund "is properly the property of plaintiffs in partial payment of their cause of action," and that the consent order requires DOE to pay the $42.24 million to the plaintiff class. Unlike the plaintiff in *Marine Petroleum,* these plaintiffs have stated a claim for relief against DOE.[6] That claim has survived a dismissal motion, and DOE is in the same posture as any other defendant who has made an unsuccessful Rule 12 motion. The question of plaintiffs' entitlement to the consent order fund and DOE's status as a party has been

---

**6.** We cannot accept DOE's contention that plaintiffs' claim against it is spurious, and therefore cannot be used to defeat this Court's appellate jurisdiction. *See Dyke v. Gulf Oil Corp.,* 601 F.2d 557, 569 n.37 (Em.App.1979). In *Dyke,* we held that DOE ordinarily may not be involuntarily joined as a party in a Section 210 action unless either the validity of a final agency order is in issue or other compelling

circumstances exist. In the cited footnote we noted that claims which are "merely pretensional, insubstantial or manipulative" should not be accepted as an excuse for improper joinder of the agency. In the present case the District Court specifically analyzed DOE's motion in light of the principles set forth in *Dyke* and found it sufficiently meritorious to withstand a Rule 12 motion. We agree.

placed directly in issue and will be effectively reviewable on appeal from a final judgment on the merits. In short, the present appeal fails to meet two parts of the collateral order test. The issue determined by the district court order is not "separable from, and collateral to," the merits of the main action. Nor is the district court order one which will be "effectively unreviewable on appeal from a final judgment." The order denying DOE's motion for judgment on the pleadings dismissing the action against it does not fall within the *Cohen* doctrine.

*Appeal dismissed for want of jurisdiction.*