Joseph STERTZ and Louis
DeNicola, Plaintiffs,

v.

GULF OIL CORPORATION,
Defendant-Appellant,

and

John S. Herrington, Secretary of the
Department of Energy, as
Stakeholder-Appellee,

and

United States of America,
Intervenor-Counter-Claimant-Appellee.

No. 2–49.

Temporary Emergency Court of Appeals.

Argued Dec. 6, 1985.
Decided Jan. 29, 1986.

John W. Castles 3d, John D. Gordan, III, Banks Brown, Lord, Day & Lord, New York City, and Charles O. Murray, Gulf Oil Corp., Houston, Tex., for defendant-appellant.

Thomas P. Battistoni, Asst. U.S. Atty., Raymond J. Dearie, U.S. Atty., Brooklyn, N.Y., with Thomas C. Newkirk, Larry P.

Ellsworth, Marcia K. Sowles, Beth N. Mizuno, Paul M. Geier, Attys., Dept. of Energy, Washington, D.C., for federal appellees.

Before GIGNOUX, METZNER and LACEY, Judges.

LACEY, Judge.

The long and convoluted history of this case [1] began in April 1977 when the Department of Energy (DOE) alleged that Gulf Oil Corporation (Gulf) had overstated its interaffiliate landed crude oil costs by approximately $79 million (later reduced to $73 million) during the period October 1973 to May 1975. Gulf opposed the proposed disallowance on factual and legal grounds.

The resultant dispute was apparently resolved by settlement in the form of what was labeled a Consent Order, executed on July 26, 1978, by Gulf's chairman, Mr. McAffee, and Paul Bloom, Esq., of the DOE's Office of Special Counsel for Compliance (OSC).

The Consent Order provides, in relevant part:

7. Gulf without admitting any noncompliance with, or violation of, any rule or regulation of the DOE, desires to resolve, pursuant to 10 C.F.R. § 205.199J, the dispute arising between itself and the OSC as a result of the matters described herein with minimal disruption to its business operations and without more formal compliance action by OSC. OSC, by means of this Consent Order, desires to conclude the pending compliance proceeding. Gulf and DOE recognize that the time periods involved and the determination of proper costs allowable make it most difficult to determine whether any person sustained an overcharge in the purchase of covered products from Gulf; and, therefore, Gulf and OSC have mutually determined to conclude these matters and agree to the terms and conditions specified herein.

\* \* \* \* \* \*

8. Gulf agrees that within 15 days of notice that the Consent Order has been made final, it will tender to the United States, upon demand, a certified check in the amount of $42,240,000.00. The payment of this amount shall be in lieu of any other remedial action including a redetermination of increased costs of crude oil and resulting overrecoveries of costs, attributable to disallowed landed costs. Gulf and OSC agree that such payment to the United States represents the most effective method of achieving payment to those who may have been overcharged by Gulf.

9. Gulf further agrees to assist in the evaluation of any claims filed by persons asserting a right to any portion of the payment. Such evaluation will be made prior to the disposition of the funds to the Treasury of the United States. DOE agrees that it will accept and discharge the full administrative DOE responsibility for establishing and administering a program for evaluating such claims and making restitution to such persons having validated claims.

\* \* \* \* \* \*

13. This Consent Order shall be a final order of the DOE having the same force and effect as an Order of Disallowance issued pursuant to 10 C.F.R. § 205.199E. In consideration of OSC's agreement to the terms of this Consent Order, and in accordance with § 205.199J, Gulf hereby expressly waives its right to appeal or obtain judicial review of this Order.

14. This Consent Order shall become effective upon publication of notice to that effect in the Federal Register. Prior to its effective date, the OSC will publish notice in the Federal Register pursuant to 10 C.F.R. § 205.199J(c) that it has entered into this Consent Order and will

1. This opinion deals only with those portions of the procedural history directly relevant to this appeal. A more complete account of the procedural history may be found in the opinions already published in this matter; *see* 685 F.2d 1367 (Temp.Emer.Ct.App.1981); 99 F.R.D. 74 (E.D.N.Y.1983); 95 F.R.D. 116 (E.D.N.Y.1982); 528 F.Supp. 735 (E.D.N.Y.1980).

provide not less than 30 days for members of the public to submit written comments with respect to it. After expiration of the comment period and prior to the effective date of this Consent Order, the OSC reserves the right to withdraw its consent to this Order for any reason. R. at 94–97.

Thus, by its terms, the Consent Order would become effective only after publication, public comment, and notice in the Federal Register that it was effective. Until that time, the government could withdraw its consent for any reason. Only after final publication would Gulf be required to pay the $42.24 million.

Fifteen days after the Consent Order was first published in the Federal Register and public comment invited, the plaintiffs brought this private action against Gulf pursuant to § 210 of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 (note).[2] They sought to represent the class of purchasers who had been overcharged by Gulf. The Secretary of the Department of Energy was also named as a defendant on the theory that he was a "stakeholder" of the $42.24 million on behalf of the plaintiff class. R. at 1–23.

Shortly after the commencement of this action, the Office of Hearings and Appeals (OHA) of DOE published proposed procedures for distributing the $42.24 million. R. at 99–105. Gulf objected to these proposed procedures, arguing primarily that they violated the Consent Order in that they subjected Gulf to "double liability" by providing for payment from the $42.24 million to indirect purchasers who had no standing to sue Gulf while failing to provide for payment to § 210 judgment creditors. DOE, however, took the position that the Consent Order was not designed to cover § 210 liability and moved to dismiss or stay the within action on the grounds of

primary jurisdiction until the $42.24 million was disbursed, thereby guaranteeing that the fund would not cover such judgments. It also moved for judgment on the pleadings.

On March 5, 1979, Gulf sought a temporary restraining order restraining the DOE from taking any step toward making the Consent Order effective and moved for leave to amend its answer to assert cross claims against the DOE. Gulf's position, as expressed in its proposed cross claims, was that it would stand by the Consent Order if DOE agreed with Gulf's understanding of it (First Cross Claim, R. at 192–99), but that otherwise Gulf would seek to have the Consent Order declared null and void (Second, Third, and Fourth Alternative Cross Claims, R. at 199–200). The restraint was granted (with DOE waiving security under Fed.R.Civ.P. 65). R. 1589–95.

Thereafter, notwithstanding that the temporary restraining order was still in effect by agreement between the parties, on March 19, 1979, the OHA published another set of proposed refund procedures. R. at 280–85. Further discussions then led to an agreement on June 7, 1979, between Gulf and the OSC denominated "Supplemental Comments of the Special Counsel for Compliance and Gulf Oil Corporation on Proposed Decision and Order." This document, which embodies certain recommendations for disbursement of the settlement fund, also provides, in relevant part, as follows:

> The Office of Special Counsel and Gulf agree that the July 26, 1978, Consent Order was not intended to expose Gulf to double liability[,] i.e., to have any part of the $42.24 million paid to any persons or entities (including the United States) other than purchasers of Gulf's products

---

**2.** Section 210 of the Economic Stabilization Act of 1970 provides:

> (a) any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to

the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages.

Only direct purchasers have standing to sue under Section 210. *Arnson v. General Motors Corp.,* 377 F.Supp. 209, 212 (N.D.Ohio 1974).

who may have been overcharged so long as any overcharge claims[,] whether asserted by legal action or by administrative claim, of such persons against Gulf remained outstanding and unsatisfied. Gulf has concurred with Special Counsel that a final Decision and Order implementing these recommendations will minimize to an acceptable level Gulf's "double liability" concerns under the Proposed Decision and Order.

R. at 717–18.

Unfortunately, OHA did not completely accept the recommendations for disbursement. While OHA's new proposed procedures, promulgated on July 23, 1979, included § 210 judgment creditors, they also contemplated that indirect purchasers of gasoline and home heating oil would be paid at the same level of priority as direct purchasers. Moreover, the procedures gave the OSC an absolute veto over any settlement of § 210 claims, rejected a recommendation that OSC's consent could not be unreasonably withheld, and in disregard of the recommendations, provided that the OHA alone, without Gulf's participation, would choose an arbitrator to resolve the amount of a reserve fund for pending cases. R. at 812–18.

It was at this juncture that Gulf returned to the district court to proceed on its motion for a preliminary injunction. A hearing was held on November 2, 1979. Gulf stated that it was willing to perform under the Consent Order as the parties who negotiated it understood it. Gulf also noted that "[i]f the order doesn't mean that I don't see how it could mean something else, given the agreement we reached in June of this year, but if it turns out it means something else, then the whole Pandora's box opens up." R. at 1093. The clear implication was that Gulf would press its alternative cross claims to have the Consent Order declared void.

The DOE refused to be bound by the agreement of June 7, 1979, but instead defended the OHA's latest proposed procedures. It also refused to accept the court's suggestion that the DOE delay distribution of the settlement funds it might receive until this action was resolved. R. at 2661.

Accordingly, on March 6, 1980, the district court issued its decision granting the preliminary injunction, stating:

There remains the question of Gulf's motion for a preliminary injunction restraining the DOE from publishing the Consent Order of July 1978 so as to make the same effective before a determination is made here with respect to "the true intent, meaning and validity of that order."

\* \* \* \* \* \*

In view of the legitimate concern of Gulf that failure to ... postpone distribution may result in double liability, particularly given the DOE's unwillingness to honor its previous written stipulation on this point and its actions taken in violation of this Court's order, this Court feels it has no alternative but to issue the requested preliminary injunction. Gulf's adversaries have evidenced some concern about allowing Gulf to withdraw from that part of the Consent Order which requires it to post at least $42.24 million for distribution to injured purchasers. The Court agrees that this should not be permitted if the DOE is to be enjoined until an equitable method of distribution can be agreed upon or ordered by this Court. Therefore, as a condition of the injunction this Court will require that Gulf post as security (i) a bond or undertaking in the amount of $42.24 million with this Court or (ii) the $42.24 million with a mutually agreed upon (or, failing agreement, Court designated) escrow bank or agent in an interest bearing account or with the Clerk of this Court.

*Stertz v. Gulf Oil Corporation*, 528 F.Supp. 735, 741–42 (E.D.N.Y.1980). Gulf then posted a bond, bearing 12% simple interest. The bond provides for payment to be made on the bond "if it is finally determined that Gulf was not entitled to the preliminary injunction." R. at 1487.

The district court also denied the DOE's motion to dismiss or to stay as well as its motion for judgment on the pleadings. It

granted Gulf's motion for leave to file an amended answer. 528 F.Supp. at 742. The DOE appealed the decision denying its motion for judgment on the pleadings, and this court held that it lacked jurisdiction to consider the appeal since there was no final order. *Stertz v. Gulf Oil Corporation*, 685 F.2d 1367, 1372 (Temp.Emer.Ct.App. 1981). The DOE did not appeal the granting of Gulf's motion for a preliminary injunction since such orders are not appealable to TECA as of right. *See Exxon Corp. v. Federal Energy Administration*, 516 F.2d 1397 (Temp.Em.Ct.App.1975). The DOE unsuccessfully sought in the district court certification of this part of the district court's order under 28 U.S.C. § 1292(b).

Four years later, on March 20, 1984, Gulf and the DOE entered into a Stipulation of Settlement and Agreed Order. This was approved by another district judge in the Eastern District of New York, to whom the case had been transferred. Gulf and the DOE agreed that the July 26, 1978, Consent Order was final and that the June 7, 1979, agreement was final and binding; with minor modifications, they also conformed the OHA's refund procedures to those set out in the June 7, 1979, agreement. R. at 2642–49. Gulf paid the $42.24 million on March 26, 1984. The settlement left as the only issue between the parties whether Gulf owed interest up to the date of payment.

THE DECISION BELOW

The district judge who had approved the settlement, 616 F.Supp. 136, summarized the arguments of the parties:

The DOE's argument in favor of an award of interest is threefold. First, it argues that after the signing of the Consent Order, Gulf became the constructive trustee of the $42.24 million, and thus owes a duty to the intended beneficiaries of the fund to pay over the interest accumulated while the fund was being held on their behalf, rather than be unjustly enriched. Secondly, it argues that the injunction issued by Judge Platt was overbroad in that it prevented the DOE

from finalizing the Consent Order and from placing the $42.24 million in an interest bearing account, and that, therefore, the DOE may now reach Gulf's bond as compensation for the loss of interest during the pendency of the injunction. Thirdly, the DOE argues that it did not surrender its right to the interest by promulgating proposed distribution procedures that exposed Gulf to double liability, because the Consent Order itself never obligated the DOE to protect Gulf against this danger.

Gulf's position is essentially grounded in contract principles. Since the Consent Order of 1978 made Gulf's obligation to pay the $42.24 million conditional on the DOE's public acceptance of the Order, and since the DOE did not formally bind itself to the Order until March 1984, Gulf maintains that interest never accrued for the benefit of the DOE prior to this time. Gulf concedes that the DOE was unable to implement the Consent Order because of the injunction, but argues that this does not entitle the DOE to the interest accruing on the bond, because the injunction was not wrongfully issued. On the contrary, Gulf argues that the injunction was proper in that it prevented the DOE from distributing the $42.24 million in a manner violative of the Consent Order, while it maintained the DOE's right either to cancel the Order or implement it according to its terms.

R. at 2929–30.

The district judge then found that the injunction entered by Judge Platt was overbroad and that the DOE was injured thereby. He therefore awarded the 12% interest on the bond—over $20 million—to the DOE. He saw no need to review either the equitable principles cited by the DOE or its claim on the merits regarding Gulf's exposure to double liability under the Consent Order. R. at 2930.

The district court determined that the injunction could have satisfied Gulf's concerns by simply enjoining the DOE from distributing the funds, thus permitting the DOE to issue a formal acceptance of the

Consent Order. It also found that the DOE would have finalized the Consent Order and "assume[d] the risk that the particular distribution procedures enacted to implement the Consent Order might be invalidated and supplanted by other procedures that were more accommodating to Gulf." R. at 2932–33. Under this hypothesis, if the money had then been delivered to the DOE, it would have earned the interest.

Final judgment on the interest issue was entered ·pursuant to Fed.R.Civ.P. 54(b). Gulf appealed.

DISCUSSION

Initially, the question of jurisdiction must be considered.[3] Section 211(b)(2) of the Economic Stabilization Act provides:

Except as otherwise provided in this section, the Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder....

What is determinative of jurisdiction in this court "is not the existence of an ESA issue, but whether the ESA issue has been adjudicated." *Coastal States Marketing, Inc. v. New England Petroleum Corp.*, 604 F.2d 179, 187 (2d Cir.1979); *Texaco, Inc. v. Department of Energy*, 616 F.2d 1193, 1198 (Temp.Emer.Ct.App.1979).

There can be no doubt that the district court adjudicated an ESA issue when it granted the preliminary injunction. When deciding a motion for a preliminary injunction, the court must consider the likelihood of success on the merits. Since the merits before that court concerned the interpretation of a consent order resulting from an allegation by the DOE that Gulf violated the ESA, it necessarily adjudicated an ESA issue.

Gulf, however, seeks review, not of the injunction, but of a later decision that the injunction was overbroad. This later decision did not address an ESA issue, but rather rested on contract principles. R. at

2930. Thus, Gulf argues, since the decision below did not adjudicate any issue under the ESA, this court lacks jurisdiction over this appeal.

■ However, TECA has jurisdiction to decide certain questions that do not "aris[e] independently of the substantive [ESA] claim or cause of action" and have "no life apart from that substantive [ESA] claim." *Quincy Oil, Inc. v. Federal Energy Administration*, 620 F.2d 890, 893 (Temp.Em. Ct.App.1980). Such "subsidiary, procedural," or "threshold" questions include mootness, procedure, venue, ripeness, and exhaustion of administrative remedies. *Id.* (citing cases in which TECA addressed these questions).

■ The question of the overbreadth of the injunction is not independent of the ESA issue upon which the injunction was initially based. Thus, since the decision below is inseparable from the decision of the initial district court judge granting the injunction, this court has jurisdiction to hear Gulf's appeal.

Turning to the merits of the dispute, it is important to note at the outset that the meaning of the Consent Order has not been pronounced by either of the district judges who handled this matter, nor do we find it necessary to construe it. On the other hand, it cannot be overlooked that Gulf's construction, that it reflected the parties' intention to protect Gulf against double liability, was confirmed by the "Supplemental Comments" understanding of June 7, 1979, and that the ultimate settlement of March 20, 1984, between the parties recognized as final the Consent Order and final and binding the "Supplemental Comments." Thus, after 6 years, DOE finally came around to Gulf's position in agreeing to settle their dispute.

■ After carefully reviewing the terms of the preliminary injunction entered by Judge Platt against the background of the dispute before him as reflected by the

---

**3.** The question of this court's jurisdiction was raised by Gulf's motion to stay the appeal. We denied the stay, electing to treat the jurisdictional issue together with the merits of the appeal.

pleadings, we find that the injunction was not overbroad.

In concluding that it was overbroad, the district court reasoned that Gulf's interests in disbursement of the funds could have been protected if, after it paid over the $42.24 million to DOE, it had simply been enjoined from disbursing it. This analysis would be acceptable if all that Judge Platt had before him was a dispute over how the $42.24 million was to be disbursed. What the district court overlooked is that Gulf challenged not only the DOE's interpretation of the Consent Order but, alternatively, in its cross claims, the validity of that order. Indeed, as Judge Platt's opinion noted, "There remains the question of Gulf's motion for a preliminary injunction restraining the DOE from publishing the Consent Order of July 1978 so as to make the same effective before a determination is made here with respect to 'the true intent, meaning and validity of that order.'" 528 F.Supp. at 741. Thus the reason for the injunction was not simply to prevent the DOE from distributing the funds but also to prevent it from making a demand for the funds while the validity of the Consent Order was still pending.[4] If the preliminary injunction had been limited as the DOE argues, and the district court ruled, it should have been, then the DOE would have been able to finalize the Consent Order and then demand payment. Gulf would then have been faced with the dilemma of either paying $42.24 million under a consent order whose meaning and validity were in dispute and unresolved under the cross claim before the court, or of refusing to pay the money and risking heavy fines. In such a circumstance, Judge Platt's entry of the challenged preliminary injunction was proper.

This conclusion is buttressed by statements made at the time by the DOE concerning Gulf's application for the preliminary injunction. After Judge Platt had made it clear he intended to issue the in-

junction, the parties disputed the form of the order. The DOE, in its memorandum in support of its proposed order, while arguing that Gulf's proposed order was overbroad, took a position different from what it later was and is here. It did not argue that it should have been permitted to take steps to effectuate the Consent Order and finalize it while being restrained from disbursement. Nor did it argue earlier that it should be allowed to require Gulf to pay the funds. Rather, it contended that the order should read, in part, as follows:

> DOE, its officers, employees agents and divisions be, and they hereby are preliminary enjoined from finalizing the July 26, 1978 Consent Order or otherwise making it effective ...

R. at 1405. The memorandum went on:

> This language is consistent with the Court's Memorandum ... and with Gulf's reason for seeking the preliminary injunction—fear that the DOE will finalize the Consent Order and thus be able to make demand for payment. If the Consent Order cannot be finalized, no demand for payment can be made.

> Gulf's proposed order, on the other hand, is unnecessarily broad in that it seeks to enjoin the agency from taking any steps to "effectuate or implement" the Consent Order. Obviously, steps taken to effectuate or implement the Consent Order are of no effect, and more importantly, create no possibility of harm, if the DOE is restrained from finalizing the Consent Order. Moreover, the DOE's proposed order is fully consistent with the stipulation entered into by Gulf and DOE on April 6, 1979, ... which has, for over a year adequately protected Gulf's interest. This Court should refrain from expanding the preliminary injunction beyond required limits necessary to preserve the *status quo*.

R. at 1405–06.

Thus, the DOE recognized at the time that the harm Gulf sought to avoid was not

---

**4.** There was of course no determination in the district court of the merits of the "validity"

challenge.

simply (what Gulf viewed as) improper distribution of the funds but also having to pay the money at all while the validity of the Consent Order was being litigated. Moreover, the DOE admitted that by preventing it from demanding the money, the court would be preserving the status quo.

Accordingly, we conclude that the district court erred in holding that the preliminary injunction issued by Judge Platt was overbroad and in awarding the interest to DOE.

Equitable considerations support this result. At the time of the issuance of the preliminary injunction in 1980, Gulf had already been strongly arguing for nearly two years that the Consent Order protected it from double liability. Reference has been made above to the 1979 supplemental agreement between OSC and Gulf that it was the intention of the Consent Order to protect Gulf from double liability. Nearly six years after the Consent Order, the DOE finally agreed to Gulf's position.

From the moment Judge Platt issued the preliminary injunction in 1980 to the day the injunction was lifted in 1984, the DOE never advanced the argument it makes here. At no time during that period did the DOE ask the court to require Gulf to pay DOE so that it could earn interest on the money even though it was enjoined from distribution of the funds.

If the DOE were convinced of the correctness of its position, it could have litigated the cross claims. In the event it prevailed, interest would have followed as of course. If it lost, there would be no interest payable. Furthermore, if it wished to settle the matter, nothing prevented it from doing so early on and requesting the court to dissolve the injunction because the issue was moot. No interest would have accrued if this procedure had been followed.

Under the circumstances, the DOE is not entitled to interest when it waits years to settle the matter on Gulf's terms.

The court below declined to reach the equitable arguments advanced by the DOE in support of its claim to interest. Rather than protract this litigation still further, we address these contentions as well.

▪ First, the DOE argues that it is entitled to interest under a constructive trust theory. A constructive trust is designed to disgorge unjust enrichment resulting from unconscionable treatment. *Citronelle-Mobile Gathering, Inc. v. Edwards*, 669 F.2d 717, 722 (Temp.Emer.Ct. App.), *cert. denied*, 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 141 (1984); A.W. Scott, *Trusts* § 462.2 (3d ed. 1967). In this case Gulf had no legal or equitable obligation to pay DOE anything because a proper preliminary injunction had been entered. There was thus no unjust enrichment.

The DOE also argues that there is a special rule protecting fund claimants when a party enjoins governmental activity. In this case there was no fund until the preliminary injunction was listed. There is no legal basis for requiring Gulf to pay interest on a fund that did not yet exist.

The order of the district court is vacated, and the matter is remanded to the district court with instructions to enter an order returning the interest to Gulf.